STATE of Iowa, Appellee,

v.

Clyde HOLLINS, Appellant (two cases).

No. 58944.

Supreme Court of Iowa.

May 25, 1977.

Logan & Schulte, Council Bluffs, for appellant.

Richard C. Turner, Atty. Gen., Mark S. Beckman, Asst. Atty. Gen., and Lyle A. Rodenburg, Pottawattamie County Atty., for appellee.

Submitted to MOORE, C. J., and Le-GRAND, UHLENHOPP, REYNOLDSON and HARRIS, JJ.

UHLENHOPP, Justice.

These consolidated appeals involve two charges of forcible rape in violation of § 698.1, Code 1975.

In Pottawattamie Case 17,225, viewing the evidence in the light most favorable to the State, a jury could find the facts as follows.

Janelle K. Durick was reared on a farm in southwest Iowa and later moved to Council Bluffs where she worked as a dental assistant. At the time in question, March 11, 1975, she was 24 years old. She lived with her sister, 19, in an apartment. The two had their own bedrooms, separated by a bathroom. On the evening of March 10, 1975, Janelle had a date and then went to the apartment, retired about 12:30 a. m., and went to sleep. Both the apartment and the building were locked.

The next thing Janelle remembered, a man (whom she later identified as defendant Clyde Hollins) had a hand over her mouth, held a knife to her throat, and said, "Say one word and you are a gonner." Janelle testified her throat was scratched, she thought she was going to die, and she was scared and trembling. At knife-point, defendant compelled her to disrobe and submit to sexual intercourse. She testified she did not offer physical resistance because defendant "had the knife so tight up against her throat, and kept saying things about going in and cutting her sister's throat." When defendant completed his undertaking he told Janelle "he would come back and get her and would kill her sister, also, if she went to the police, and further stated that he would be watching the place and would know if she did anything." After some additional conversation, defendant left.

Janelle reported the incident to her sister, employer, and his receptionist, but did not then tell the police. Her explanation for not telling the police was that she feared defendant would carry out his threats and that she did not know what treatment she would get from the police. The police subsequently learned of the incident through the other case, and Janelle then told them what happened.

Pottawattamie Case 17,224 involves Rose Wageman. This rape charge against defendant did not go to trial. The minutes of Rose Wageman's testimony are as follows:

Rose Wageman, 320 Scott Street, Apt. # 4, Council Bluffs, Iowa will testify that on March 14, 1975 at approximately 3:15 a. m. that she had been asleep in her bed at the above residence when she saw a shadow and then had her mouth covered by the hand of the defendant; that the defendant told her to whisper and she would not be hurt; at this time the defendant displayed a screwdriver and stated that either, "You're afraid to live or afraid to die. Which one do you want to do?"; at this time he asked Rose to pull up her top and then he removed her pajama bottoms and panties; that at that time the defendant climbed on top of her and committed the act of intercourse; Rose will further testify that she was very scared and laid very still and talked to the defendant; she will also testify that this was the first time she had ever had intercourse and that it hurt very much; that after the act of intercourse was committed the defendant made a telephone call on her telephone; that after a short conversation he left the residence and Rose did not see the direction of travel the defendant took; Rose will further testify that she never had seen the defendant before. Rose will also testify that she went to the Mercy Hospital Room in Council Bluffs, Iowa and was examined by Dr. Pohlman and released; that at approximately 4:15 p. m. on March 14, 1975 Officers from the Council Bluffs Police Department showed Rose photographs of black male individuals, eight pictures in all; that at that time Rose will testify that she picked out the photograph of Clyde Hollins as being the Black male subject that did rape her; that at approximately 12:15 p. m. on

March 17, 1975 Rose was taken before Magistrate Dan McTaggart where she did file the charge of Rape against Clyde Hollins.

In addition to the two rape charges, the Pottawattamie County Attorney filed two charges of aggravated burglary against defendant growing out of the two incidents. Defendant pleaded not guilty to all of the charges.

Case No. 17,225 involving Janelle Durick went to trial. The jury found defendant guilty and the trial court sentenced him to a term of 25 years in the penitentiary.

After that conviction, the prosecutor and defendant, with his counsel, entered into a plea bargain in the *Rose Wageman* case, No. 17,224, subject to the court's approval: defendant would plead guilty in No. 17,224 on condition, first, that the prosecutor would not proceed with the burglary charges, second, that the prosecutor would not argue for a particular term of sentence in the *Rose Wageman* case, and third, that the prosecutor would recommend the two sentences run together. Defendant accordingly pleaded guilty. He does not contend that the prosecutor did not perform his part of the bargain or that the trial court did not comply with *State v. Sisco,* 169 N.W.2d 542 (Iowa). The trial court imposed a 25-year sentence and ordered that it run concurrently with the sentence in the *Janelle Durick* case.

Defendant appealed from the two judgments and sentences.

I. *No. 17,225.* In the *Janelle Durick* case defendant makes two main contentions through his present counsel (not the same as trial counsel—in district court defendant had two attorneys, at different times).

A. Defendant first objects to a number of statements and questions by the assistant county attorney during trial, in what defendant contends was over-zealous prosecution. The State first responds that defendant did not raise most of his objections in the trial court, so that we have nothing to review in those instances. *State v. Rosewall,* 239 N.W.2d 171 (Iowa); *State v.*

*Farmer,* 234 N.W.2d 89 (Iowa). Our examination of the record reveals that the State's position is well taken. We therefore confine ourselves to the instances which do present issues for review.

In the first instance raised in the trial court defendant contends the prosecutor injected race into the case. We have examined the proceedings very closely to see whether the contention is true and whether defendant suffered prejudice. The case was hotly contested on both sides. For his evidence, defendant introduced a map of Janelle's apartment and the testimony of his mother, Mrs. Alice Hollins. One of the issues, of course, was whether the sexual intercourse was against Janelle Durick's will. As bearing on that issue, defendant's mother testified that she formerly lived on 14th Avenue in Council Bluffs, that she there raised a family of 13 children including defendant, that numerous young people, black and white, visited in her home, and that Janelle Durick was among those young people on four or five occasions. On rebuttal, Janelle testified she had never been in the home in question on 14th Avenue, had never previously seen defendant's mother, had not been in her home, and did not know of any reason or any place she might have been seen by defendant's mother.

The prosecutor waived opening jury argument. Defense counsel thereupon argued to the jury, and the assistant county attorney then made a closing argument. Dealing with the conflicting testimony of defendant's mother and Janelle, the assistant county attorney's argument included this statement:

Ask yourself this. Mrs. Hollins says she lives at 818 Fourteenth Avenue, or did, at that time. I have never been there—maybe you have—in that area. Remember Janelle Durick, what she acted like. Think about it. Is she going to be down there? What is she going to be down there for? Remember how Janelle Durick's testimony came out, in the fashion it came out. She had some trouble with tears, naturally, and she shook a little bit. The testimony came out in a

generally flowing condition. As contrast to Mrs. Hollins, it came out in jerks in her response to questions. That's how it came out. Just remember how the two of them testified. She said there was some other people there. Who was there and where are they at? Janelle Durick was down at her house playing records. If you believe that, that's fine. It's just impossible in the light of the rest of the facts.

Defendant contends that 14th Avenue is a neighborhood largely composed of black people and that the prosecutor injected race into the case.

The testimony of defendant's mother, and Janelle's denial, placed the prosecutor in the position of having to deal with the subject of that testimony. The trial court ruled that the prosecutor's arguments were responsive to those of defense counsel and were not improper. This situation illustrates the wisdom of the rule granting considerable discretion to trial courts in ruling on argument and in determining whether an accused sustained prejudice. Whether the assistant county attorney transgressed the bounds of propriety in these particular circumstances, and whether prejudice occurred here, we believe to be largely a matter for trial court determination. *State v. Swallom,* 244 N.W.2d 321 (Iowa); *State v. Blackwell,* 238 N.W.2d 131 (Iowa); *State v. Monroe,* 236 N.W.2d 24 (Iowa). The trial court considered the problem and concluded that a mistrial declaration was not in order. We are not willing to overturn the trial court's decision.

■ In so holding we do not imply approval of arguments injecting race into litigation. When race is unavoidably entangled in a factual setting, as it is here, attorneys should strive to handle the issue as objectively as possible so as not to arouse animosity toward any individual on account of race. The aim of litigation is to ascertain objectively the very truth of a dispute without reference to extraneous or ulterior considerations.

■ A second instance in the Janelle Durick case involves a question, improper in form, in which the assistant county attorney endeavored to bolster the conclusion that Janelle's tears, shed during her principal testimony about the happening, were genuine, in opposition to the counter inference sought to be drawn by the defense. The trial court promptly sustained an objection to the question and we find no basis for reversal here. *State v. Hall,* 235 N.W.2d 702 (Iowa); *State v. Lass,* 228 N.W.2d 758 (Iowa).

■ A third instance involves a contention by defendant that the assistant county attorney violated defendant's Fifth Amendment right by referring to defendant's failure to take the stand. This part of the prosecutor's argument was as follows:

I think that everything she [Janelle] did was reasonable under the circumstances. I think she did more than a lot of people would have done. She stood up to this with dignity as much as she could, but it was tough. And I want you to analyze what she did in light of this. When you come down to your final decision, get through all these peripheral issues that Mr. Gray [defense attorney] tried to latch your attention to, it comes to this. Are you going to believe Janelle Durick, what she had to say? Are you going to remember how she said it? Are you going to take the testimony off her [offered?] by the defense by way of Mrs. Hollins and some map? Are you going to discount what she had to say? That's the issue. Do you buy it? Do you believe what she had to say?

The trial court held that the prosecutor did not invade defendant's Fifth Amendment right at this point. We agree with the ruling. This is an entirely different record than those in the line of cases relied on by defendant beginning with *State v. Osborne,* 258 Iowa 390, 139 N.W.2d 177.

We thus find no ground for reversal on defendant's first main contention.

■ B. Defendant's second main contention is that the State did not generate a jury issue on rape of Janelle and that the trial court should have sustained defendant's motion to direct a verdict. Defendant

points to a number of circumstances in evidence which, as he argues, show that the sexual intercourse was with Janelle's consent. These are jury arguments. The trial court properly submitted the case to the jury. *State v. Smith,* 195 N.W.2d 673 (Iowa); *State v. Gray,* 216 N.W.2d 306 (Iowa). See also *State v. Baskin,* 220 N.W.2d 882 (Iowa).

We uphold the conviction in No. 17,225.

II. *No. 17,224.* In the *Rose Wageman* case defendant does not rely on breach of the plea bargain by the prosecutor or failure of the trial court to inform him of his rights. Instead, defendant contends that in the setting of his recent conviction in the *Janelle Durick* case, and under all the circumstances, his guilty plea to the charge of raping Rose Wageman was not voluntary in fact.

█ Defendant was, of course, faced with a difficult situation. After the jury verdict the State could go forward with the Rose Wageman trial, and the two burglary charges also pended. But this was the situation as it actually existed; it was not a trumped up situation. Defendant had to deal with the situation as it was. No guilty plea is voluntary in the sense that the accused *desires* to enter it.

We have scrutinized the proceedings. No compulsion by the trial court or the prosecutor appears. Defendant had competent counsel. He had the opportunity to get the assurance that the burglary charges would not be pressed, that the prosecutor would not ask for any particular term of years, and that the prosecutor would recommend concurrent sentences in the two cases. Defendant chose to accept the bargain; he had a right thus to try to make the best of a bad situation. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. We uphold the guilty plea as voluntary.

AFFIRMED ON BOTH APPEALS.