STATE of Iowa, Appellee,

v.

Guillermo ESCOBEDO, Appellant.

No. 95–2005.

Court of Appeals of Iowa.

Sept. 24, 1997.

Steven D. Pals of Klay, Veldhuizen, Binder, DeJong & Pals, Orange City, for appellant.

Thomas J. Miller, Attorney General, Sheryl A. Soich, Assistant Attorney General, and Mark J. Schouten, County Attorney.

Heard by CADY, and STREIT, JJ., and HABHAB, Senior Judge.*

CADY, Judge.

Guillermo Escobedo appeals his convictions for first-degree murder, willful injury, and assault causing bodily injury. He asks for a new trial claiming error based on the denial of his motion for change of venue, substitution of a juror during deliberations, prosecutorial misconduct, and improper jury instructions. We affirm the convictions.

Escobedo was convicted of first-degree murder, willful injury, and assault on September 22, 1995, following a jury trial. The State presented evidence Escobedo and co-defendant Cesar Herrarte stabbed two young men with meat-packing knives after a fight broke out at a party on January 14, 1995. The party took place at a house in Hawarden, Iowa, and was attended by a number of young people. One of the teenage stabbing victims died a short time later. His wounds were so deep and severe that numer-

---

* Senior judge assigned by order pursuant to Iowa Code § 602.9206 (1997).

ous vital organs and arteries in the chest and stomach area were cut or severed and some of his abdominal contents were expelled from his body.

Escobedo moved for a change of venue from Sioux County based on the small, rural nature of the jurisdiction, extensive media coverage, general public knowledge of the incident, his nationality and immigration status, and the lapse of time between the incident and the trial.[1] The trial court denied the motion.

The case proceeded to trial with jury selection commencing September 6, 1995. The jury was impaneled on September 8. Three alternate jurors were selected. Prospective jurors were examined by the court as well as the attorneys.

The evidence in the case was presented to the jury over the course of the following two weeks. The trial court then gave its instructions to the jury and closing arguments were presented by the attorneys. The alternate jurors were subsequently excused but told by the trial judge not to discuss the case until a verdict had been returned. The jury then retired to begin its deliberations shortly after 3 p.m. on September 21. They deliberated into the evening and were excused around 10 p.m. with instructions to return at 9 a.m. the next morning to resume their deliberations.

The next morning, the county attorney informed the trial judge he recently received information from a person who reported hearing a juror make racial remarks about Escobedo at a bar a few nights earlier. The trial judge conducted an inquiry into the report, which included testimony from the juror and the informant, and dismissed the juror from the case. He then told Escobedo's lawyer he "intended to use" the dismissed first alternate juror, and Escobedo's lawyer responded "yes." The alternate juror was summoned and replaced the dismissed juror. Deliberations resumed after the trial

judge instructed the jury to begin their deliberations anew. The jury returned its verdict later in the day.

Escobedo raises four claims on appeal. He first asserts the trial court erred in denying the motion for change of venue. He next claims the trial court erred in substituting the alternate juror during deliberations. He further claims the prosecutor repeatedly committed misconduct during closing argument by referring to his ethnic background, discussing his involvement in other crimes, injecting his personal beliefs into his argument, and making statements unsupported by evidence. Finally, Escobedo argues the jury instructions improperly permitted the jury to infer malice and malice aforethought to sustain the first-degree felony murder verdict.

## I. Change of Venue

Our review of a refusal to grant a motion for change of venue is de novo. *State v. Wagner*, 410 N.W.2d 207, 210 (Iowa 1987). We recognize, however, the decision to grant or refuse a change of venue primarily rests in the discretion of the trial court and we will reverse that decision only when the discretion has been abused. *Id.*

Our rules of criminal procedure require venue to be changed when "such degree of prejudice exists in the county in which the trial is to be had that there is a substantial likelihood a fair and impartial jury cannot be preserved with a jury selected from that county." Iowa R. Crim. P. 10(10)(b). To obtain a reversal of a conviction based on the denial of a motion for change of venue, either actual prejudice on the part of the jury must be shown or the publicity attending the case must be so pervasive and inflammatory prejudice is presumed. *State v. Harris*, 436 N.W.2d 364, 367 (Iowa 1989).

---

1. The population of Sioux County in 1990 was 29,903. The county is served by several newspapers, including the *Sioux City Journal* which reaches an average of 4152 of the 10,300 households in Sioux County each day. The incident was covered extensively in all area news sources, especially in the local newspaper in Hawarden.

The coverage included editorials and numerous letters to the editor. Escobedo was from Mexico and employed at a lamb kill plant in Hawarden. One letter was critical of "all the trouble that has happened in our community since Iowa Lamb Co. hired ... illegal aliens." The population of Hawarden in 1990 was 2439.

We fail to find presumed prejudice from our review of the record. Most of the media reports were factual in nature and restricted to the first two months following the incident. There were some letters printed in the newspaper critical of the impact of the illegal immigrant population·in the community, but other letters and editorials were conciliatory and spoke favorably about immigrants in the community. Community and law enforcement leaders repeatedly emphasized in the news reports the incident was not racially motivated. Moreover, extensive voir dire was conducted in this case with most jurors responding the pretrial publicity would not adversely affect their ability to be fair and impartial. *See Wagner,* 410 N.W.2d at 211 (voir dire can be trusted to expose prejudices based on pretrial publicity).

Escobedo argues this case illustrates the impropriety of relying upon voir dire examination to expose prejudice in publicized cases because jurors can be dishonest in their responses to the questions, and prejudice should be presumed when a biased juror actually becomes part of the jury. We disagree. The incident involving the dismissed juror does not give rise to a presumption of prejudice on the part of the jury. The presumption of prejudice pertains to pervasive pretrial publicity. Claims that the jury that did serve was not impartial must be grounded on evidence appearing of record. *State v. Neuendorf,* 509 N.W.2d 743, 747 (Iowa 1993). There was no evidence the dismissed juror in this case had any effect on the verdict or that the jury was impartial. We do not find the district court abused its discretion in denying the motion for change of venue.

## II. Substitution of Jury

Our rules of criminal procedure permit the selection of alternate jurors to sit at trial and replace any regular juror who becomes unable to serve, or becomes disqualified, before the jury retires to deliberate on the verdict. Iowa R.Crim. P. 17(15). There are a variety of circumstances that can arise during the course of a trial which require jurors to discontinue their service, and the availability of alternate jurors to replace dismissed jurors helps to avoid the time, expense, anxiety, and inconvenience associated with a mistrial.[2] Although some jurisdictions recognize the replacement of regular jurors during deliberations, we do not.[3] Our rules only permit the replacement of a regular juror prior to the commencement of the deliberations and require alternate jurors to be discharged after the deliberations begin. *Id.*

We agree with Escobedo the district court was not authorized to replace a juror during deliberations. We also agree Escobedo would have been entitled to a mistrial after the trial court dismissed the juror during the deliberations. However, Escobedo did not request the trial court to declare a mistrial, but instead acquiesced in the replacement of the dismissed juror with a previously dismissed alternate juror.[4] This response is critical to our analysis of the claim.

We recognize our time-honored principle that claims of error must first be raised at trial. *State v. Heacock,* 521 N.W.2d 707, 710 (Iowa 1994). This principle acknowledges we are a court of review and provides the needed symmetry in our judicial process by requiring the trial judge to be

2. In Iowa, a jury of twelve is required in all cases involving serious criminal charges, and unanimity is required to reach a verdict. *See* Iowa .R.Crim. P. 17, 21. Consequently, the failure to meet these requirements would support a mistrial. . *See State v. White,* 209 N.W.2d 15, 17 (Iowa 1973). A defendant, of course, may waive the requirements and be tried by a jury of less than twelve. *State v. Browman,* 191 Iowa 608, 182 N.W. 823, 833–34 (1921); *see State v. Henderson,* 287 N.W.2d 583, 585 (Iowa 1980).

3. Some states permit replacement of jurors during deliberations. *See* Cal.Civ.Proc.Code § 233; Indiana Rules of Trial Procedure, Trial Rule 47(B); K.S.A. 22–3412. The Federal Rules of

Criminal Procedure, however, do not permit the replacement of a juror during deliberations. Fed. R.Crim. Proc. 24(c).

4. A defendant must normally request a mistrial to avoid a confrontation with the double jeopardy clause on retrial. *State v. Dixon,* 534 N.W.2d 435, 442 (Iowa 1995). Absent manifest necessity, defendants are deprived of the right to have their trial completed by a particular tribunal when a judge aborts the trial without the defendant's consent. *United States v. Jorn,* 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543, 556 (1971).

alerted to the claim of error at trial and given an opportunity to correct it without an appeal. *See State v. Halliburton*, 539 N.W.2d 339, 342 (Iowa 1995). Without this opportunity, we have no decision or action to review. *See State v. Wages*, 483 N.W.2d 325, 326 (Iowa 1992). Nearly all error, including jury irregularities, may be waived.[5] *See id.; State v. Doughty*, 397 N.W.2d 503, 504–05 (Iowa 1986).

 We conclude Escobedo waived his claim of error based on the unauthorized replacement of a juror during deliberations. Furthermore, we reject his invitation made in oral argument to excuse the waiver by adopting the plain error standard of review. *Lamphere v. State*, 348 N.W.2d 212, 218 (Iowa 1984) (supreme court refused to adopt plain error rule).

### III. Prosecutorial Misconduct

 Prosecutorial misconduct warrants a new trial when it is "so prejudicial as to deprive the defendant of a fair trial." *State v. Lyons*, 210 N.W.2d 543, 549 (Iowa 1973). To establish the claim, a defendant must show both misconduct and prejudice. *State v. Farmer*, 492 N.W.2d 239, 242 (Iowa App.1992). Trial courts have broad discretion to determine whether prejudice resulted from misconduct. *State v. Anderson*, 448 N.W.2d 32, 33 (Iowa 1989). As a firsthand observer to both the claimed misconduct and any reaction by the jury, the trial court is better equipped than an appellate court to determine the presence of prejudice. *Id.* at 34. Consequently, we will reverse a trial court ruling only upon finding an abuse of discretion. *Id.* This occurs when discretion is "exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.*

 Prejudice ordinarily results from persistent efforts to inject prejudicial matter before the jury. *State v. Webb*, 244 N.W.2d 332, 333 (Iowa 1976). It is also important to consider the strength of the evidence of guilt. *Id.* If the evidence is strong, an inappropriate comment by a prosecutor is unlikely to contribute to a conviction. *See id.* Moreover, the prejudicial effect of misconduct can ordinarily be eliminated with an admonition by the trial court. *State v. Williams*, 315 N.W.2d 45, 56 (Iowa 1982).

Escobedo claims the prosecuting county attorney repeatedly committed misconduct while presenting his closing argument to the jury. He claims it began when the prosecutor described Escobedo as "Hispanic" and the victims and their friends as "the white guys." He next asserts misconduct occurred when the prosecutor referred to the possible use of drugs by Escobedo. He further claims the prosecutor injected his personal beliefs into the trial by repeatedly prefacing statements with the phrases "I believe," "I suggest," "I submit," and "I think." Escobedo additionally complains a brief and inadvertent display to the jury of an overlay on an overhead projector by the prosecutor which read "Innocent People Don't Lie" constituted misconduct. Finally, Escobedo argues the prosecutor made numerous improper references and misstatements from the evidence.

 We agree with Escobedo that the prosecutor's use of race as a method of identification of certain persons or groups of people involved in the case amounted to misconduct under the circumstances. Even if race may be entangled in the factual setting of a case, attorneys must vigilantly strive to handle the issue as objectively as possible to prevent creating animosity toward any individual or group based on race. *State v. Hollins*, 253 N.W.2d 597, 600 (Iowa 1977).

 We are not so quick to find misconduct concerning the other claims raised by Escobedo. Although drug use was not an issue in this case, many witnesses for the State who attended the party believed drugs were being used. This perception may have

---

5. The exception to this rule involves those rare situations that qualify as an unconstitutionally unfair trial. *State v. Heacock*, 521 N.W.2d 707, 710 (Iowa 1994). For example, review is not precluded if the failure to preserve error results from the due process right to effective represen-
tation. *State v. Clark*, 351 N.W.2d 532, 535 (Iowa 1984). Escobedo did not raise this type of claim. Moreover, numerous reasons may exist to justify Escobedo's acquiescence in the substitution of the juror.

colored their actions and was a proper comment on the evidence.

In addressing the claim of expression of personal beliefs by the prosecuting county attorney, we recognize the line between zealous permissible courtroom advocacy and impermissible argument can be very thin. *See* ABA Standards, *The Prosecution Function,* at 128. A prosecutor may properly draw conclusions and argue all permissible inferences which may reasonably flow from the evidence during closing argument. *State v. Phillips,* 226 N.W.2d 16, 19 (Iowa 1975). On the other hand, the prosecutor may not create evidence by argument or interject personal beliefs. *Id.* This precludes the prosecutor from using the closing argument to personally vouch for a defendant's guilt or a witness's credibility. *State v. Williams,* 334 N.W.2d 742, 744 (Iowa 1983). This is true whether the personal belief is based on knowledge of facts not presented at trial, the prosecutor's experience in other cases, or any other ground other than the weight of the evidence presented at trial. *Id.* Expressions of personal belief by a prosecutor not expressed as reasonable inferences from the evidence are barred from the courtroom because they tend to exploit the influence of the office and undermine the objective detachment which should separate a lawyer from the case. *Id.* at 745.

The use of the personal pronoun "I" by a prosecutor during closing argument does not generally amount to an improper expression of personal belief as long as it clearly communicates nothing more than a comment on the evidence. *United States v. Jaswal,* 47 F.3d 539, 544 (2nd Cir.1995). Thus, the occasional use of such rhetorical phrases as "I suggest" or "I submit" normally amounts only to fair argument. *United States v. Modica,* 663 F.2d 1173, 1181 (2nd Cir.1981). Yet, the repeated use of such phrases can run the risk the jury may think the issue is whether the prosecutor is truthful instead of whether the evidence is to be believed. *Id.*

We have examined the specific claims urged by Escobedo.[6] Placed in context, it is clear the prosecutor was not referring to his personal opinions or extrajudicial information, but was arguing the evidence presented at trial as well as the reasonable inferences from the evidence. Moreover, the personalized phrases were not used so often that the jury would have transformed the issue into the credibility of the prosecutor.

The "Innocent People Don't Lie" overlay runs perilously close to crossing the line between permissible and impermissible argument, and could have been impermissible under different circumstances. However, it was inadvertently exposed to the jury for only a couple of seconds and was not accompanied by argument. The prosecutor had decided to abandon the use of the overlay and its accompanying argument about the false story Escobedo originally told law enforcement officials during an interview after the incident. While the projected phrase could have quickly led to improper argument, we acknowledge a false story told by a defendant to explain or deny a material incriminating fact is an indication of guilt. *See State v. Cox,* 500 N.W.2d 23, 25 (Iowa 1993).

Finally, we cannot agree with Escobedo that the prosecutor repeatedly drew improper inferences from the evidence and misstated the evidence. Nevertheless, assuming some of the prosecutor's comments constituted misconduct, no showing of prejudice resulted.

The grant of a new trial based on prosecutorial misconduct does not hinge on the misconduct, but the resulting prejudice

---

6. Some examples cited by Escobedo include: (1) In discussing an altercation that preceded the incident between Escobedo and the victim, the county attorney said, "I submit, ladies and gentlemen, it wasn't too violent." (2) In discussing witness credibility, the county attorney said, "The witnesses who spent the day drinking, I believe they demonstrated from the stand [they] were the worst witnesses." (3) In discussing Escobedo, the county attorney said, "I think he made a lot of admissions." (4) With respect to the claim of self-defense, the county attorney said, "I believe it is as Mr. Escobedo originally described...." (5) Regarding the intoxication defense, the county attorney said, "I submit to you, ladies and gentlemen, that one needs to be awfully intoxicated before one doesn't have a clue as to what he or she is doing."

which prevents the trial from being fair. *State v. Anderson*, 448 N.W.2d 32, 33 (Iowa 1989). At each objection raised by Escobedo in response to a claim of prosecutorial misconduct, the district court gave the jury an appropriate admonition geared to removing any possible prejudice. In particular, we observe the trial court's instruction in response to the reference to race was extraordinarily stern and explicitly described the matter the jury was not to consider. The evidence against Escobedo was strong. Considering all the circumstances, we conclude any misconduct did not contribute to the conviction. We find no abuse in the trial court's discretion in overruling the motion for mistrial and motion for new trial.

## IV. Felony Murder

Escobedo contends the trial court instructions improperly permitted the jury to infer malice aforethought to support a conviction for felony murder once it found the underlying felony, willful injury, was committed. He asserts his due process and equal protection rights were violated without an instruction requiring the jury to make a specific finding of malice aforethought separate from the specific intent to harm element of willful injury.

Under our statutes defining criminal conduct, first-degree murder may occur under five circumstances. Iowa Code § 707.2 (1995). One circumstance occurs when a person murders another person during the commission of a forcible felony. *Id.* This is historically known as the felony-murder doctrine. Because all murder requires malice aforethought, felony murder likewise requires not only proof of participation in a forcible felony but proof of malice aforethought. *State v. Ragland*, 420 N.W.2d 791, 794 (Iowa 1988).

Willful injury is a forcible felony and can be used to support a conviction for felony murder. *State v. Beeman*, 315 N.W.2d 770, 776 (Iowa 1982). Essentially, this crime is an assault committed with the specific intent to cause serious injury. Iowa Code § 708.4. When willful injury is the underlying felony in a felony murder charge, the evidence to establish the specific intent to cause serious injury will often be the same for proving malice aforethought required for murder. *Ragland*, 420 N.W.2d at 794. Notwithstanding, intent to cause serious injury and malice aforethought remain distinct elements, and the presence of one does not establish the other. *Id.* The State must prove both. *Id.*

The trial court in this case instructed the jury that "malice may be inferred from the commission of willful injury which results in death."[7] Escobedo argues this instruction impermissibly allowed the jury to find malice to support the murder component of felony murder once it determined willful injury occurred, without making a separate finding of malice aforethought. He asserts the instruction merged the separate mens rea elements of murder and willful injury. *See* Note, *Iowa's Felony–Murder Statute: Eroding Malice and Rejecting the Merger Doctrine*, 79 Iowa L.Rev. 941, 948–55 (1994). We disagree.[8]

We previously approved of the disputed jury instruction in the face of the same argument asserted by the defendant in *State v. Bennett*, 503 N.W.2d 42, 46 (Iowa App.1993). In that case, we concluded the instruction simply created an inference and did not relieve the State of its obligation to prove malice. *Id.* We stand firm by that holding today.

We quickly acknowledge a finding of willful injury does not necessarily establish malice. *See Ragland*, 420 N.W.2d at 794. However, the instruction in this case only created a permissible inference and did not permit the jury to find malice based on a

---

7. This instruction was derived from Iowa Uniform Criminal Jury Instruction 700.9.

8. The trial court also instructed that "malice aforethought may be inferred from the defendant's use of a dangerous weapon." *See* Uniform Criminal Jury Instruction 700.10. Similarly, Escobedo argued this instruction also created an improper inference by failing to require the jury to make an independent finding of malice aforethought. We also reject this argument.

willful injury conviction in the abstract.[9] It permitted the jury to infer malice from the acts of committing willful injury resulting in death. Moreover, the marshaling instruction for felony murder separated the two elements and required a specific finding that Escobedo acted with malice aforethought and participated in the offense of willful injury.

 Malice aforethought may be implicit. Iowa Code § 707.1; *State v. Veverka*, 271 N.W.2d 744, 747 (Iowa 1978). Furthermore, it may be inferred from the commission of the underlying forcible felony resulting in death in a felony-murder charge. *State v. Taylor*, 287 N.W.2d 576, 578 (Iowa 1980). Allowing a jury to draw this permissible inference does not merge the separate mens rea elements of murder and willful

injury. The district court properly instructed the jury.

## V. Conclusion

We have considered all claims raised by Escobedo. We affirm the judgment and conviction.

**AFFIRMED.**

SACKETT, HUITINK, and MAHAN, JJ. take no part.

---

**9.** The strength of Escodedo's argument rests with his premise that the phrase "commission of willful injury which results in death" means the jury could imply malice based simply on a finding that willful injury resulting in death occurred, without further consideration of the underlying facts and circumstances. *See* Note, 79 Iowa L.Rev. at 952. We disagree. An inference is a permissible finding based on the existence of certain facts. *State v. Lewis*, 242 N.W.2d 711, 716 (Iowa 1976). Thus, to infer malice from the commission of willful injury means to derive a finding of malice from the facts involved in committing willful injury.