# IN THE COURT OF APPEALS OF IOWA

No. 17-1072
Filed June 6, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**REVELL NAVAS'JA TONEY,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Cerro Gordo County, Colleen D. Weiland, Judge.


        Revell Toney appeals his convictions of attempt to commit murder and possession of a firearm by a felon.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Melinda J. Nye, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, and Timothy M. Hau, Assistant Attorney General, for appellee.


        Considered by Vogel, P.J., and Doyle and Bower, JJ.

**VOGEL, Presiding Judge.**

Revell Toney appeals his convictions of attempt to commit murder and possession of a firearm by a felon. He asserts the district court abused its discretion in excluding his witness and his trial counsel was ineffective for failing to object to the prosecutor's improper statements. Because Toney did not file the notice of an additional witness until after the State had rested and the proffered testimony lacked relevance, the district court did not abuse its discretion in excluding the witness, and Toney has not shown the prosecutor committed misconduct resulting in prejudice. Therefore, we affirm.

## I.    Background Facts and Proceedings

Around 11:00 p.m. on the evening of October 22, 2016, Revell Toney went to a party at an acquaintance's home. He brought a drink to the party called "dirty Sprite," which he testified he made by dissolving Jolly Ranchers candies and eight to ten Xanax pills[1]—totaling eight to ten milligrams—in a two-liter bottle of Sprite. He drank the dirty Sprite from a paper coffee cup that he refilled throughout the night. He also drank a couple of shots of alcohol at the party. Shortly before 2:00 a.m. on October 23, Toney and a friend decided to leave the party and go to a bar located in Mason City. Toney testified the Xanax took effect around the time he arrived at the bar, and he does not remember much about the next few hours.

Also on the evening of October 22, Stephen Williams was celebrating his birthday. He and his friends went to the same bar as Toney around 9:00 or 10:00

---

[1] Xanax has never been prescribed to Toney.

p.m. that night. They spent the next few hours socializing and drinking a pitcher of beer.

Around 2:00 a.m. on October 23, Toney and Williams encountered each other outside the bar. They did not know each other well, and they had no disagreement before the encounter. They soon began an argument, which escalated into a fistfight. After throwing a few punches, the pair separated and backed up. Williams asked if they were done and called Toney a "bitch." Witnesses testified Toney replied with "I'm going to blow your ass down," or "This is what I'm going to do about it, bitch." Toney then drew a gun and fired at least three times, hitting Williams in his arm and abdomen and again in his buttocks as he tried to flee.

Williams was transported to a hospital unresponsive and in critical condition. He underwent emergency surgery. He stayed in the hospital until about November 10, when he was transferred to a rehabilitation facility where he remained for another week or so. He testified as to the long-term effect of one bullet hitting a nerve in his left leg, which caused drop foot—an inability to fully lift his left foot— inability to run, and difficultly walking.

Immediately after the shooting, Toney fled the scene. He testified his next memory is waking in a hotel room later that morning, wearing different clothing and having a shaved head. He went to his mother's house and talked to his family and close friends. Later that afternoon, he came to the decision to turn himself in to the police. He testified he "was in and out" during police questioning that day and had difficulty staying awake to cooperate with the police.

The State charged Toney with attempt to commit murder and possession of a firearm by a felon. His trial began on May 2, 2017. He generally defended by claiming he could not form the specific intent needed to commit murder due to his health issues and consumption of Xanax and alcohol, or, alternatively, he merely intended to scare Williams when he fired the shots. The State rested on May 4. Later that day, at 4:14 p.m., Toney filed a notice of an additional witness, which first notified the State that he may call as a witness his sister Mya Handy. The next afternoon, he attempted to do so. The State objected, and Toney made an offer of proof. During the offer of proof, Handy testified she saw Williams go "live on Facebook when he got out of the hospital," and he was moving around, walking, and dancing as he left the hospital. She also claimed to have provided substantial care to Williams for about two weeks after he left the rehabilitation facility, which contradicted a State's witness who testified she cared for Williams during this time. The State objected to having Handy testify on several grounds, including the lateness of the notification. The district court agreed with the State that Toney did not provide fair notice about Handy, and it found her testimony lacked relevance. Therefore, the district court excluded her as a witness. As noted above, the jury convicted Toney of attempt to commit murder and possession of a firearm by a felon under Iowa Code sections 707.11 and 724.26(1) (2016).

Toney appeals from his convictions. He claims the district court abused its discretion in excluding Handy as a witness. He also claims his trial counsel was ineffective for failing to object to the prosecutor's statements during closing arguments.

## II.     Standard of Review

We review the exclusion of a witness for abuse of discretion.  *State v. Richards*, 809 N.W.2d 80, 89 (Iowa 2012).  We review an ineffective-assistance-of-counsel claim de novo.  *Ledezma v. State*, 626 N.W.2d 134, 141 (Iowa 2001).  To prevail on an ineffective-assistance-of-counsel claim, the claimant must show by a preponderance of the evidence both ineffective assistance and prejudice.  *Id.* at 142 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

## III.     Witness Exclusion

Toney argues the district court abused its discretion in excluding Handy as a witness.  Iowa Rule of Criminal Procedure 2.13(4) provides:

> *Failure to comply.*  If the defendant has taken depositions under rule 2.13(1) and does not disclose to the prosecuting attorney all of the defense witnesses (except the defendant and surrebuttal witnesses) at least nine days before trial, the court may order the defendant to permit the discovery of such witnesses, grant a continuance, or enter such other order as it deems just under the circumstances.  It may, if it finds that no less severe remedy is adequate to protect the state from undue prejudice, order the exclusion of the testimony of any such witnesses.

The district court is not required to make specific findings that a sanction short of exclusion would not protect the State from undue prejudice, but it is good practice for the court to do so.  *State v. Babers*, 514 N.W.2d 79, 82 (Iowa 1994).

Toney took depositions, which obligated him to timely disclose his witnesses under Iowa Rule of Criminal Procedure 2.13(4).  Toney disclosed Handy as a witness late in the afternoon of May 4, after the State had rested.  Toney claimed Handy only came forward after the day's recess on May 4 to say she had information that contradicted earlier testimony.  Toney does not explain why he did not timely identify his sister, Handy, as a witness despite her asserted knowledge

of Williams's condition in the weeks after the shooting. Because of the extreme lateness of the notice and the lack of relevance of the proffered testimony, the district court did not abuse its discretion in excluding Handy as a witness. *See* Iowa R. Crim. P. 2.13(4).

Even if the district court had erred in excluding Handy, Toney must also show the exclusion prejudiced his substantial rights. *See Richards*, 809 N.W.2d at 90 ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right . . . is affected." (alteration in original) (quoting Iowa R. Evid. 5.103(a)). Toney was convicted of attempt to commit murder.

> A person commits the offense of attempt to commit murder when, with the intent to cause the death of another person and not under circumstances which would justify the person's actions, the person does any act by which the person expects to set in motion a force or chain of events which will cause or result in the death of the other person.

Iowa Code § 707.11(1); *accord State v. Young*, 686 N.W.2d 182, 185 (Iowa 2004) ("To be guilty of attempted murder the statute requires (1) a specific intent to cause the death of another and (2) an overt act in furtherance of the required specific intent.").

Toney argues he suffered prejudice because Handy's testimony could have contradicted the testimonies of Williams and another witness as to Williams's recovery period, which would have cast doubt on the severity of Williams's injuries. That, in turn, could have shown that Toney did not form the specific intent to attempt to commit murder, and he only intended to scare Williams, who he asserts was not severely injured. *See* Iowa Code § 707.11(1). However, Handy's proffered testimony only addressed her perception of the severity of Williams's

injuries weeks after the shooting. The State presented strong evidence of Williams's injuries after the shooting from many sources, including testimony from multiple witnesses present at the shooting or its immediate aftermath, testimony from one of the doctors who operated on Williams after the shooting, and photographs of Williams immediately after the shooting. Handy's testimony actually supported the State's evidence that Williams needed weeks of inpatient medical care in the hospital and rehabilitation facility, after which he needed substantial in-home care while he recovered. Regardless of Handy's belief as to how quickly and fully Williams recovered, the uncontroverted evidence of the severity of Williams's injuries supports the conclusion that Toney possessed the needed specific intent to cause the death of another person. *See id.* Therefore, because Handy could not contradict the severity of Williams's injuries nor provide any other relevant evidence, the exclusion of Handy's testimony did not prejudice Toney's substantial rights. *See Richards*, 809 N.W.2d at 90.

## IV. Prosecutor's Statements

Toney also argues the prosecutor made improper statements during closing arguments, and his counsel was ineffective in failing to object to these statements.

A successful claim of prosecutorial misconduct requires proof of misconduct and "proof the misconduct resulted in prejudice to such an extent that the defendant was denied a fair trial." *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). Prosecutorial misconduct involves more than a mere error. *State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016).

> Prosecutorial misconduct includes those statements "where a prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct,"

as well as "those situations where a prosecutor recklessly disregards a duty to comply with an obligation or standard." Prosecutorial error occurs "where the prosecutor exercises poor judgment" and "where the attorney has made a mistake" based on "excusable human error, despite the attorney's use of reasonable care."

*Id.* (quoting Shawn E. Minihan, *Measuring Prosecutorial Actions:  An Analysis of Misconduct Versus Error,* Prosecutor, Dec. 2014, at 24–25).  "A prosecutor 'is entitled to some latitude during closing argument in analyzing the evidence admitted in the trial.'  Moreover, a prosecutor may argue the reasonable inferences and conclusions to be drawn from the evidence.  A prosecutor may not, however, express his or her personal beliefs."  *Graves*, 668 N.W.2d at 874 (quoting *State v. Phillips*, 226 N.W.2d 16, 19 (Iowa 1975)).

During closing arguments, the prosecutor made the following statements:

> But let's go further.  All of the information about the Xanax is based on [Toney's] testimony, about what he says, and about what he told the doctors about the amount of Xanax that was used.
> He even says he didn't take his medication that morning.  Now why is that?  If you've been taking your medication the whole time, why do you come up here and say you haven't taken it that morning?  Was that to help you in your intoxication defense?  I wonder.
> . . . .
> Now they make a big thing about this whole thing at the police department him falling asleep.  But come on.  That is over thirteen-and-a-half hours later from the shooting.  He had a good night's sleep, he said.  He saw his mother.  He saw his girlfriend.  What is he sleeping for?  He wasn't sleeping earlier.  Or is this, again, part of his idea that he's going to try to convince people that he's under the influence of something.
> . . . .
> Now he says—you know, the implication by the defense counsel is that, well, I guess he was fading and he shot a couple times, didn't know where he was shooting.  Are you serious?  Where did he shoot him?  Boom, boom, boom.  What is this area?  We all know that if you're gonna try to kill somebody, this is where you shoot him.  Right here.  This is where our vitals are.  And that's what he's doing.  He shooting him in the vital areas to kill him.

Toney argues the prosecutor improperly called him a liar. While a prosecutor generally may not call the defendant a "liar," a prosecutor may draw reasonable inferences from the evidence to argue the defendant has not been truthful. *See id.* at 876. Here, the prosecutor never said "liar" or used similar language, and the prosecutor never explicitly said Toney was being untruthful. During the trial, Toney testified he has been diagnosed as bipolar and he regularly takes medications for his bipolar condition though he did not take them on October 22, 2016, before he drank the Xanax mixture. In closing, the prosecutor noted Toney's arguments benefit from his uncorroborated testimony about taking or not taking certain drugs and being unable to concentrate during police questioning. The prosecutor also noted Toney would benefit from exaggerating during his testimony. Such statements are reasonable inferences drawn from the evidence, and they do not rise to misconduct. *See Graves*, 668 N.W.2d at 876; *see also State v. Thornton*, 798 N.W.2d 670, 676 ("In closing arguments, counsel is allowed some latitude. Counsel may draw conclusions and argue permissible inferences which reasonably flow from the evidence presented.").

Additionally, Toney asserts the prosecutor's comments about Toney attempting to kill Williams by "shooting him in the vitals area" is not supported by the record. "Counsel have no right to create evidence during argument." *State v. Pepples*, 250 N.W.2d 390, 396 (Iowa 1977). However, the prosecutor here did not claim Toney chose the "best way" to kill Williams, as Toney asserts. Instead, the prosecutor merely claimed Toney attempted to kill Williams by shooting him in the "vitals." As the State argues, "It cannot be seriously controverted that the human torso is where the majority of one's essential organs are located." The medical

testimony, detailing the organs affected by the bullet to the abdomen, allows the inference that Toney shot Williams "in the vital areas."

Toney also argues the prosecutor made improper personal and emotional pleas during closing arguments in the following statements:

> What's disgusting about this story is that he's even shooting him in the back as he's running away. An unarmed man.
>     I'm asking that he takes responsibility for his actions. He's 19. He's a man. And he needs to take responsibility for his actions.
>     I'm asking that you find him guilty of Count I, attempted murder; and Count II, possession of a firearm as a felon.

Toney notes the prosecutor used the pronoun "I." However, "[t]he use of the personal pronoun 'I' by a prosecutor during closing argument does not generally amount to an improper expression of personal belief as long as it clearly communicates nothing more than a comment on the evidence." *State v. Escobedo*, 573 N.W.2d 271, 278 (Iowa Ct. App. 1997). The prosecutor's comments that Toney is a "man" who "needs to take responsibility for his actions" were in response to earlier defense comments that Toney was a "boy" who had "own[ed] up to it" by turning himself in. Some of the comments may have been colorful, but they are not misconduct that caused "the jury to decide the case based on emotion rather than upon a dispassionate review of the evidence." *Graves*, 668 N.W.2d at 875.

Furthermore, even if some of the prosecutor's comments rose to the level of misconduct, Toney must show the comments resulted in prejudice. One factor of prejudice is "the severity and pervasiveness of the conduct." *Id.* at 869. The prosecutor's statements, uttered only during closing arguments, were too isolated to cause prejudice. *See id.* at 880 ("[T]he prosecutor's misconduct in this case

may not have risen to the level of a due process violation if it had occurred in isolation.").

Because Toney has not shown the prosecutor committed misconduct resulting in prejudice, Toney has not shown the prosecutor violated his due process right to a fair trial. *See id.* at 869. Therefore, Toney has not proven his counsel was ineffective for failing to object to the prosecutor's statements during closing arguments. *See Ledezma*, 626 N.W.2d at 141.

## V. Conclusion

The district court did not abuse its discretion in excluding Handy as a witness because the exclusion did not prejudice Toney's substantial rights. Additionally, his ineffective-assistance-of-counsel claim fails because he did not prove his counsel was ineffective for failing to object to the prosecutor's statements during closing arguments

**AFFIRMED.**