# IN THE COURT OF APPEALS OF IOWA

No. 18-0354
Filed May 1, 2019

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**GRIFFIN EDWARD MEYER,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Des Moines County, Emily S. Dean,

District Associate Judge.


　　　A defendant appeals his conviction for being absent from custody.

**AFFIRMED.**


　　　William Monroe, Burlington, for appellant.

　　　Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney

General, for appellee.


　　　Considered by Potterfield, P.J., and Tabor and Bower, JJ

**TABOR, Judge.**

An outing to the neighborhood Buffalo Wild Wings and Walmart is not interchangeable with a road trip to Illinois. Griffin Meyer learned this lesson the hard way when he was convicted of being absent from custody for deviating from his approved furlough plan. Meyer appeals his serious misdemeanor conviction, challenging the sufficiency of the evidence and presenting several claims of ineffective assistance of counsel. Because the State offered nearly uncontested evidence supporting the elements of the offense, and Meyer cannot show prejudice from counsel's performance, we affirm.

**I. Facts and Prior Proceedings**

As a result of a felony conviction, in the fall of 2017, Meyer lived at the Burlington Men's Residential Correctional Facility, a halfway house. His probation officer would not permit contact between Meyer and his wife, Mari.[1] Despite Meyer's circumstances, Mari scheduled their son's baptism for October 8 at her church in Monmouth, Illinois.

Because Meyer did not want to miss the baptism, on September 29, he asked his probation officer, Rob Humphrey, for permission to attend. Humphrey denied the request because Meyer's attendance would have resulted in contact with Mari. Despite the official denial, Meyer and Mari formed a plan to facilitate Meyer's presence at the baptism. On October 5, Meyer submitted a recreational furlough application, asking permission to walk to Buffalo Wild Wings and Walmart on October 8. The approved furlough application permitted Meyer to leave the

---

[1] The restriction related to an order of protection imposed by Illinois authorities. Mari testified she "dropped" the order because she had "no fear" of Meyer.

facility at 12:30 p.m. and travel on foot to Buffalo Wild Wings and Walmart. It required his return by 4:30 p.m.

On October 8, Meyer left the facility at 12:30 p.m. But he did not walk to either approved location. Instead, Mari picked him up by car a short distance from the facility. Meyer drove them to Monmouth, Illinois, for the baptism, which was scheduled to start at 1:15 p.m. The couple was running late, so Meyer pushed their speed to at least thirty-five miles per hour over the posted limit. An officer pulled them over and arrested Meyer after discovering he had an outstanding warrant for the crime of unlawful restraint in Henderson County, Illinois.[2] Meyer did not return to the Iowa facility by 4:30 p.m. as required and instead remained in various Illinois jails for several days.

As a result of Meyer's deviation from the terms of his furlough, the State charged him with being absent from custody in violation of Iowa Code section 719.4(3) (2017). The matter proceeded to a jury trial, and Meyer stipulated he had been committed to the Burlington Men's Residential Correctional Facility, which was a community-based correctional facility. The jury found Meyer guilty after roughly twenty minutes of deliberation. Meyer now appeals his conviction.

**II. Scope and Standards of Review**

"We review challenges to the sufficiency of the evidence for correction of errors at law." *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017). "We will uphold a verdict if it is supported by substantial evidence." *Id.* Evidence is "substantial if, when viewed in the light most favorable to the State, it can convince a rational jury

---

[2] The officer also took Mari to the church so she could be present for the baptism ceremony.

that the defendant is guilty beyond a reasonable doubt." *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012).

If the record is too scanty to resolve claims of ineffective assistance, we preserve them for future postconviction-relief proceedings. *State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2005). But if the record is sufficient to resolve ineffective-assistance claims, we may decide them on direct appeal, and our review is de novo. *Id.*

## III. Analysis

### A. Sufficiency of the Evidence

Meyer moved for judgment of acquittal both at the close of the State's case and again after he rested. He contended, as he does on appeal, he could not be guilty of being absent from custody when his arrest and incarceration in Illinois prevented him from returning to the Iowa facility. Meyer's argument misses the mark by focusing on his conduct at the end of the furlough and ignoring his conduct *during* the furlough.

The marshalling instruction required the State to satisfy these elements:[3]

> 1. The defendant had previously been committed to the Burlington Residential Correctional Facility.

---

[3] Meyer's counsel objected to the marshalling instruction at trial, but he does not renew that objection on appeal. As the district court concluded, the instruction comports with Iowa Code section 719.4(3), which states: "A person who has been committed . . . to a community-based correctional facility, . . . who knowingly and voluntarily is absent from a place where the person is required to be, commits a serious misdemeanor." *See also State v. Burtlow*, 299 N.W.2d 665, 669 (Iowa 1980) ("[Subsection three] can apply to trustees, persons on work release programs, and the like, who are not being held physically in confinement and whose actions do not constitute a breach of any physical restraint, but violate the conditions upon which they have been granted a limited liberty." (alteration in original) (quoting 4 John J. Yeager & Ronald L. Carlson, *Iowa Practice: Criminal Law & Procedure* § 428, at 110 (1979)).

2. The Burlington Residential Correctional Facility is a community-based correctional facility.

3. While in custody, the defendant was required to be at the Burlington Residential Correctional Facility or at his approved furlough locations.

4. On or about the 8th day of October, 2017, the defendant was knowingly and voluntarily absent from the place he was required to be.

Meyer stipulated to the first two elements.[4]

The State offered substantial evidence supporting the two remaining elements. A facility employee testified he discussed the approved furlough locations, Buffalo Wild Wings and Walmart, with Meyer as he signed out. Meyer confirmed in writing he was aware of the furlough's limitations. When Meyer did not return by the designated hour, facility staff learned of his arrest in Warren County, Illinois, which was outside of his permitted travel route.

Defense witnesses confirmed Meyer's unapproved absence. Mari testified she picked up Meyer away from the facility to avoid detection, indicating they knew Meyer was not permitted to enter the car. And, sealing his own fate, Meyer testified he knew the furlough agreement limited his movement outside the facility to Buffalo Wild Wings and Walmart and he purposely did not go to either. The record included sufficient evidence for the jury to conclude Meyer was absent from

---

[4] The stipulation stated in full:

Comes now the parties, who enter into the following stipulation to be entered into evidence during the trial of this matter and published to the jury. The parties stipulate to the following is true and correct:

1. On September 15th, 2017, Griffin Edward Meyer had been committed to the Burlington Men's Residential Correctional Facility.

2. The Burlington Men's Correctional Facility is a community-based correctional facility.

The parties so stipulate.

Meyer, his attorney, and the prosecutor all signed the stipulation, and it was entered into evidence.

custody when he drove to Illinois while required to be at the facility or within the scope of the approved furlough application. We will not disturb the jury's verdict.

### B. Ineffective Assistance of Counsel

Meyer next claims his trial counsel provided constitutionally deficient representation by failing to object to a jury instruction and to certain statements made by the prosecutor.[5] To succeed, Meyer must show "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). But "both elements do not always need to be addressed. If the claims lack prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). Prejudice occurs when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 143 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (Iowa 2001)).

Meyer first takes issue with his counsel's failure to object to the marshalling instruction's omission of language expressly recognizing the furlough permitted him to walk to Buffalo Wild Wings, Walmart, and back to the facility.[6] As a result, he contends the marshalling instruction incorrectly mandated conviction for his

---

[5] At the end of Meyer's sufficiency argument, he briefly claims counsel was ineffective for failing to challenge a statement in the State's closing rebuttal argument that Meyer believes concedes the claim against him. This argument is not sufficiently developed for our review, and we do not address it. *See State v. Harris*, 919 N.W.2d 753, 754 (Iowa 2018) ("If the development of the ineffective-assistance claim in the appellate brief was insufficient to allow its consideration, the court of appeals should not consider the claim, but it should not outright reject it."). Should Meyer wish to do so, he may develop and bring this claim in a postconviction-relief action. *See id.*

[6] On appeal, Meyer colorfully argues the instruction "seemed to presume the ability of appellant to magically move or to teleport from one location to another."

travel between locations. Assuming without deciding counsel had a duty to make this specific objection, we conclude Meyer did not suffer prejudice. Meyer did not walk to Buffalo Wild Wings or Walmart; instead he traveled by unapproved means to another state. Had counsel insisted the marshalling instruction include language recognizing Meyer could walk between locations, no reasonable probability exists its inclusion would have changed the outcome of the trial. *See Maxwell*, 743 N.W.2d at 197.

Meyer also claims counsel was ineffective for failing to object to three alleged instances of prosecutorial error or misconduct. Prosecutorial misconduct occurs when "'a prosecutor intentionally violates a clear and unambiguous obligation or standard imposed by law, applicable rule or professional conduct,' as well as 'those situations where a prosecutor recklessly disregards a duty to comply with an obligation or standard.'" *State v. Schlitter*, 881 N.W.2d 380, 394 (Iowa 2016) (citation omitted). This differs from prosecutorial error, which occurs when a prosecutor makes an inadvertent mistake through the exercise of poor judgment resulting in an unintentional violation. *Id.*; *State v. Plain*, 898 N.W.2d 801, 819 (Iowa 2017). Prosecutorial misconduct or error only entitles a defendant to relief if it results in prejudice. *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). And because Meyer brings his claim within the ineffective-assistance-of-counsel framework, he must establish had his attorney objected to the prosecutor's statements, it was reasonably probable the jury would have had "reasonable doubt respecting guilt." *See State v. Coleman*, 907 N.W.2d 124, 141–42 (Iowa 2018) (citation omitted).

With these principles in mind, we consider the three passages Meyer finds objectionable: First, when cross-examining Mari, the prosecutor asked, "And once it was determined that [Meyer] could not be there, you, being religious and maybe asking yourself what would Jesus do, and you came up with this scheme that involved dishonesty?" Meyer asserts this question belittled Mari's religious convictions.[7] Second, the prosecutor began his closing rebuttal argument by saying: "Ladies and gentlemen, I'm about ready to go upstairs and shout from the roof 'I don't care if he was planning to be back by 4:30' and neither should you." According to Meyer, by making this statement, the prosecutor "commissioned himself as an expert witness" and expressed an opinion regarding Meyer's guilt. And third, Meyer alleges the prosecutor belittled his religious sincerity and his love for his son by saying: "Oh, Mr. Meyer. Poor Mr. Meyer. He just wanted to see his son get baptized." Meyer claims these three instances—considered individually or in combination—resulted in prejudice to his case.

We turn first to the prosecutor's question to Mari invoking her devotion to Jesus. The State defends the conduct, calling it "a mundane cross-examination about an apparent contradiction between those portions of her testimony on direct examination about her faith and about her willingness to help Meyer lie to facility staff."[8] We are not reasssured by the State's explanation. We understand the

---

[7] Meyer also claims this comment effectively served as a religious test, which is prohibited by article I, section 4 of the Iowa Constitution. A religious test conditions a witness's ability to testify on his or her acceptance of specific religious beliefs. Allan W. Vestal, *The Lingering Bigotry of State Constitution Religious Tests*, 15 U. Md. L.J. Race Religion Gender & Class 55, 75–76 (2015). Although inartfully phrased, the prosecutor's question did not amount to a religious test.

[8] The State further argues: "Note that her religious views were not used to attack her credibility—instead, the credibility attack was based on her participation in Meyer's scheme to lie about his furlough plans and to violate furlough restrictions."

defense broached the subject of Mari's faith on direct examination as a backdrop to the importance she placed on her son's baptism. Still, the prosecutor took a gratuitous jab at the witness's conviction to the ideals of her professed faith. Our court has cautioned, "[W]e deplore the injection into a trial of sex, race, color, or creed bias." *State v. Blanks*, 479 N.W.2d 601, 605 (Iowa Ct. App. 1991). The prosecutor's inquiry "seemed intended to highlight the hypocrisy" of being "very religious" yet participating in a deceptive plan to secure Meyer's attendance at the church. *See, e.g.*, *Miller v. Winn*, No. 18-1540, 2018 WL 5849899, at *5 (6th Cir. Aug. 27, 2018) (examining comment in prosecutor's closing argument that defendant had "no problem" laying the knife he used in an assault on top of a Bible). We fail to see how any perceived hypocrisy was relevant to Mari's credibility. But even assuming the prosecutor's deriding of Mari's faith was improper, Meyer is unable to show the question caused him prejudice. *See id.* at *5–6. Given the overwhelming evidence of Meyer's guilt, we see no reasonable probability of a different outcome had counsel objected to the inquiry. *See Coleman*, 907 N.W.2d at 141.

As for the comment about shouting from the rooftop, we have long given prosecutors some leeway for rhetorical flourishes in closing argument. *See, e.g.*, *State v. Burns*, 94 N.W. 238, 241 (Iowa 1903) (advising prosecutor was "not required to [forgo] all the embellishments of oratory"). While it may have been better not to speak in the first person, not all personalized remarks are improper. *State v. Williams*, 334 N.W.2d 742, 745 (Iowa 1983); *State v. Escobedo*, 573 N.W.2d 271, 278 (Iowa Ct. App. 1997) ("The use of the personal pronoun 'I' by a prosecutor during closing argument does not generally amount to an improper

expression of personal belief as long as it clearly communicates nothing more than a comment on the evidence."). It was fair game for the prosecutor to attack the defense theory of the case. *See Coleman*, 907 N.W.2d at 140. And even if the way he did it was objectionable, Meyer again is unable to show *Strickland* prejudice.

With regard to the prosecutor's refrain, "Oh, Mr. Meyer. Poor Mr. Meyer. He just wanted to see his son get baptized," we find context is key. The prosecutor followed this statement by saying: "And we can understand that. We can sympathize with that." From our reading, the prosecutor was commiserating with Meyer's predicament rather than mocking him. But even if we are missing a more sarcastic tone on our cold record, Meyer cannot show a defense objection would have had a reasonable probability of changing the outcome of his case.

Finally, Meyer claims the cumulative prejudice resulting from counsel's performance requires relief. *See State v. Clay*, 824 N.W.2d 488, 501–02 (Iowa 2012). We disagree. The State proved beyond a reasonable doubt that Meyer was absent from his approved furlough locations. In light of the overwhelming evidence of Meyer's guilt, we conclude any aggregated prejudice to be inconsequential to the outcome.

**AFFIRMED.**