772 N.W.2d 249 (2005)
STATE of Iowa, Plaintiff-Appellee,
v.
Roosevelt MATLOCK, Defendant-Appellant.
No. 04-0404.
Court of Appeals of Iowa.
August 17, 2005.
*251 Linda Del Gallo, State Appellate Defender, and Shellie Knipfer, Assistant Appellate Defender, for appellant.
Thomas J. Miller, Attorney General, Linda Hines, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Kim Griffith, Assistant County Attorney, for appellee.
Heard by MAHAN, P.J., ZIMMER, J., and BROWN, S.J.[*]
ZIMMER, J.
Roosevelt Matlock appeals from the judgment and sentence entered by the district court following his convictions for willful injury while being a habitual offender and going armed with intent while being a habitual offender, in violation of Iowa Code sections 708.4(1), 708.8, and 902.8 (2003). He claims that (1) the district court erred in admitting evidence of his other bad acts, (2) his trial counsel was ineffective for failing to object to prosecutorial misconduct, and (3) the district court abused its discretion in imposing sentence. We affirm his convictions, but vacate the sentences imposed and remand for resentencing.

I. Background Facts & Proceedings
On the evening of September 6, 2003, Joel Riley was entertaining some friends from out-of-town. Shortly after midnight on September 7, he took his friends to the Uptown Lounge in Waterloo. Riley's two sisters and their husbands were already at the bar when Riley arrived. After Riley got to the bar he noticed Roosevelt Matlock standing next to him. Matlock was wearing a purple suit and was rocking back and forth. Riley and Matlock exchanged pleasantries and then Matlock walked away. Approximately twenty minutes later Matlock returned to where Riley and his friends were standing and said, "You all leave that alone." Matlock leaned into Riley when he spoke and then walked away. Matlock later returned and said, "You and him leave that alone." Matlock then bumped into Riley with his shoulder.
Later, Riley walked outside the bar and saw Matlock. Matlock was standing against a wall chanting something unintelligible and rocking back and forth. Riley asked Matlock why he was stalking him. Matlock did not respond. Riley then told Matlock to leave him and his friends alone. Matlock did not respond and just continued chanting and rocking back and forth. Riley then called Matlock "Barney."[1] Jay Jordan, Riley's brother-in-law, saw what was going on and grabbed Riley by the arm and told him to come back into the bar. As Jordan was pulling Riley away he noticed that Riley had been cut. Matlock had sliced Riley's cheek open from his ear to his mouth. Riley was also cut on his forehead, his right forearm, and his left wrist.
Riley's relatives immediately rushed him to the hospital. Riley needed surgery to *252 repair the injury to his cheek, which was approximately one-half inch deep and twelve centimeters in length. The emergency room doctor and Riley's surgeon testified that Riley's injuries were inflicted by a sharp instrument such as a knife or box cutter.[2]
Officers identified Matlock as a suspect. They arrested him at his home later that day.
On December 22, 2003, the State filed an amended trial information charging Matlock with willful injury and going armed with intent. Each count alleged that Matlock was subject to sentencing as a habitual offender because of his prior record of convictions.
Prior to trial, the State filed a notice of intent to introduce evidence of two similar crimes Matlock committed within a two-week period of his alleged assault on Riley.[3] Matlock resisted the State's motion. The district court decided to allow the State to present the evidence of Matlock's other bad acts, but also decided to give a limiting instruction to the jury regarding the evidence.
Matlock filed a notice of self-defense prior to trial. In January 2004 a jury trial commenced. At trial, Matlock admitted that he struck Riley. However, he maintained that the injuries to Riley were caused by a drinking glass he had carried out of the bar rather than a knife or a box cutter. Matlock testified that Riley and his companions had threatened a friend of his inside the bar, that Riley told him he was a member of a gang, and that when he struck Riley he was merely trying to protect himself from Riley. The jury found Matlock guilty on both counts. Matlock waived his right to a jury trial on the question of his habitual offender status. The district court found Matlock had two previous felony convictions and therefore ruled that he was a habitual offender.
On February 26, 2004, Matlock appeared before the court for sentencing in this caseBlack Hawk County case number 118993and two other casesBlack Hawk County case numbers 116785 and 117741.[4] In each case the court sentenced Matlock to two fifteen-year concurrent terms. The court then ordered that each of the three pairs of fifteen-year sentences would run consecutively to each other. Thus, Matlock was sentenced to forty-five years in prison. Matlock appeals.

II. Scope and Standards of Review
We review rulings on the admission of evidence of other bad acts for an abuse of discretion. State v. White, 668 N.W.2d 850, 853 (Iowa 2003). In order to show an abuse of discretion, one generally must show the district court exercised its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable. State v. Most, 578 N.W.2d 250, 253 (Iowa Ct.App.1998).
We review claims of ineffective assistance of counsel de novo. State v. Polly, 657 N.W.2d 462, 465 (Iowa 2003). To prove an ineffective assistance of counsel claim, Matlock must show by a preponderance *253 of the evidence that (1) trial counsel failed to perform an essential duty, and (2) prejudice resulted from counsel's error. Id. Failure to demonstrate either element is fatal to a claim of ineffective assistance. Id.
We review sentencing decisions for correction of errors at law. Iowa R.App. P. 6.4. Because the challenged sentence does not fall outside statutory limits, we review the district court's decision for abuse of discretion. State v. Thomas, 547 N.W.2d 223, 225 (Iowa 1996). Consideration of an improper sentencing factor is an abuse of discretion and requires that the defendant be resentenced. State v. Thomas, 520 N.W.2d 311, 313 (Iowa Ct.App.1994).

III. Other Bad-Acts Evidence
Matlock first claims the district court erred in admitting evidence of his other bad acts. He argues the court did not give a valid, non-character reason for allowing this evidence. He also asserts the evidence was not relevant to any issue at trial and that any probative value the evidence possessed was substantially outweighed by the danger of unfair prejudice.
Iowa Rule of Evidence 5.404(b) provides:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
If the other crimes evidence is relevant and material to establish a legitimate issue in the case other than a general propensity to commit wrongful acts, then it is prima facie admissible. State v. Sullivan, 679 N.W.2d 19, 25 (Iowa 2004). However, the prima facie admissibility of relevant evidence is overcome, and the evidence must be excluded, if its probative value is substantially outweighed by the danger of unfair prejudice. Id.; see also Iowa R. Evid. 5.403.
The challenged evidence here concerned two different crimes Matlock committed within a two-week period of the attack at issue in this case. The first incident occurred on August 26, 2003. On that day, Moses Childs was visiting his mother at her second floor duplex when he got into an argument with Matlock's niece about parking. Matlock's niece lived on the first floor of the same duplex. Matlock arrived later and confronted Childs. Matlock told Childs that he did not like the way Childs had spoken to his niece. Matlock then reached into his pocket and swung at Childs. Matlock struck Childs cutting him.
Childs's treating physician, Dr. Anthony Markham, testified that Childs's cut was approximately one inch deep and seven inches in length. Dr. Markham stated that a sharp instrument such as a knife or a box cutter caused the wound. Childs's sister testified that about two hours after her brother was stabbed she heard Matlock on the phone telling someone that he meant to kill Childs.
The second incident occurred on September 7, 2003, the same day Joel Riley was attacked. At approximately 3:30 p.m., Fred Burnside was at J's R & B Bar talking to his friend, Wayne Winters, when Matlock and his brother, Nate, entered the bar. Winters approached Matlock and asked him what he had meant when he previously told Winters that he liked Winters's wife. Matlock told Winters to take his statement anyway he wanted. As Matlock and Winters spoke, Burnside noticed that Matlock had removed a box cutter from his pocket. Burnside grabbed Matlock *254 and pulled him to the floor. Nate then pulled Burnside off of Matlock. As Nate was pulling Burnside off of Matlock, Matlock cut Burnside. Burnside was able to run out of the bar, but Matlock chased after him. Burnside testified that Matlock told him, "I'm going to kill you. I ain't got nothing to live for anyway, I want to be with my mama and dad." Burnside was eventually able to get away from Matlock.
Burnside's cut was approximately one to one and a half inches deep and required surgery and eighteen staples to repair. Burnside's surgeon, who had also treated Riley earlier that day, testified that Burnside's injury, like Riley's, was caused by a sharp knife-like instrument.
In offering the evidence of the other bad acts at trial, the State asserted the evidence was relevant to the issue of Matlock's specific intent. The district court agreed and allowed the evidence in, subject to a limiting instruction.[5] We find no error in this decision.
To determine the admissibility of the proffered evidence, we first must analyze whether the evidence was relevant to a legitimate issue other than a general propensity to commit wrongful acts. Sullivan, 679 N.W.2d at 25. Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Iowa R. Evid. 5.401.
Matlock contends the other acts evidence is not relevant to any legitimate issue in the case, and does no more than show a general propensity to commit the type of crimes charged in this matter. Our supreme court has recognized the danger presented when other similar but unrelated crimes are admitted as evidence of a defendant's specific intent to commit the crime charged. Sullivan, 679 N.W.2d at 26-28. "`Though an inference of general intent from the prior crime to the offense charged can be made, such an inference is based upon propensity, which is precisely the reasoning that is condemned by [rule 5.404(b)] and its philosophical underpinnings.'" Id. at 27 (quoting Abraham P. Ordover, Balancing the Presumption of Guilt and Innocence: Rules 404(b), 608(b) and 609(a), 38 Emory L.J. 135, 156-57 (1989) (hereinafter Ordover)).
Thus, other crimes evidence is not admissible when the State relies on the theory that, if the defendant previously possessed the specific intent to commit a certain act, he probably possessed the same intent at the time of the charged offense. Id. at 29. Rather, whenever other crimes evidence is offered "to establish an ultimate inference of mens rea, the court should require the prosecutor to `articulate a tenable noncharacter theory of logical relevance.'" Id. at 28. Upon a review of the record in this matter, we agree with the State that a logical theory of noncharacter relevance supports admission of evidence of the attacks on Childs and Burnside.
First, we note that Matlock's specific intent was a contested issue at trial. See State v. Taylor, 689 N.W.2d 116, 124 (Iowa 2004) (noting first and essential question is whether intent was in issue). The State was required to prove Matlock's specific intent to establish both the charge of willful injury and the charge going armed with intent.[6] Moreover, Matlock denied that he *255 was armed with a cutting device or instrument, testifying that he struck Riley with a beer glass while acting in self-defense. Consequently, the State had the burden to prove not only that Matlock was armed with a dangerous weapon and that he attacked Riley with the intent to cause him serious injury, but that the attack was without justification. See State v. Rubino, 602 N.W.2d 558, 565 (Iowa 1999). Matlock's acts of cutting two different people with a sharp instrument such as a knife or a box cutter, within two weeks of the stabbing at issue in this case, are undoubtedly relevant on the question of whether Matlock was acting with the requisite criminal intent, or whether "his actions were the product of an innocent state of mind." Taylor, 689 N.W.2d at 126 (citation omitted).
Evidence of Matlock's other intentional violent acts makes it more probable that his actions in this case were the product of intentional, voluntary decisions to inflict serious injury upon Riley. The fact that Matlock, in a short span of time, violently attacked two other individuals in a manner similar to his attack on Riley, raises a reasonable inference that his actions in this case were the product of specific intent rather than non-culpable justification.[7] Because Matlock's other bad acts were relevant proof of his intent to commit the offenses charged, and negated his claim of self-defense, the district court correctly concluded the exclusionary provisions of rule 5.404(b) did not apply.
Our inquiry does not end with this determination, however. As stated above, even relevant other bad acts evidence must be excluded if the evidence's probative value is substantially outweighed by its potential for unfair prejudice. Evidence is unfairly prejudicial if it
[a]ppeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action that may cause the jury to base its decision on something other than the established propositions in the case.
State v. White, 668 N.W.2d 850, 854 (Iowa 2003).
In weighing the probative value of the evidence against the danger of unfair prejudice, the court must consider
on the one side, the actual need for the other-crimes evidence in light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other hand, the degree to which the jury will probably *256 be roused by the evidence to overmastering hostility.
Id. at 855.
On appeal, we must determine whether the trial court abused its discretion in deciding the probative value of the evidence was not substantially outweighed by the danger of unfair prejudicial effect. When we apply the foregoing standards, we conclude there is not a demonstrated abuse of discretion by the district court.
On the one hand, the need for, proof of, and strength of the evidence all support admission. Matlock contested whether he had specific intent to cause Riley serious injury, and maintained he attacked Riley in self-defense. Intent is seldom capable of proof through direct evidence. The evidence of Matlock's other bad acts was extrinsic evidence the jury could consider in determining whether Matlock had formed specific intent necessary to commit the offenses charged in this case, and tended to make the existence of Matlock's specific intent on September 7, 2003, more probable than it would be without this evidence. Additionally, there was clear proof Matlock committed the other bad acts. He did not dispute them at trial. Finally, we note the probative similarity between Matlock's other bad acts and the charged crimes. In each case, Matlock responded to some exchange of words with another male by slashing or stabbing the person, with a box cutter, knife, or sharp cutting instrument, inflicting serious injury.
On the other hand, we do not believe that, in the context of the trial below, the evidence of Matlock's other bad acts aroused the jury's sense of horror. Although it is possible the jury could have been swayed by unfair prejudice from the admission of the evidence, the other bad acts were not the focus of the trial; the State in fact spent little time developing the other bad acts evidence. As a result, it is unlikely the evidence roused the jury to overmastering hostility.
Given all the foregoing, we cannot say the district court did not fairly weigh the relevant factors in deciding whether to admit the prior bad acts evidence. The court's resolution of this difficult balancing approach was reasonable and did not constitute an abuse of discretion.

IV. Ineffective Assistance of Counsel
Matlock contends his trial counsel was ineffective for failing to object to prosecutorial misconduct. He maintains the prosecutor made improper statements during the State's closing argument, which constituted misconduct, and his counsel failed an essential duty when he did not object to the statements.
We begin our analysis with the presumption that Matlock's trial counsel acted competently. State v. Spurgeon, 533 N.W.2d 218, 219 (Iowa 1995). In order for Matlock to prevail on his ineffective assistance claim, he must prove his counsel's performance was not within the normal range of competence, and there is a reasonable probability that but for his counsel's unprofessional errors, the result of the proceeding would have been different. State v. Hopkins, 576 N.W.2d 374, 378 (Iowa 1998). A reasonable probability is a probability sufficient to undermine confidence in the outcome. State v. Bugely, 562 N.W.2d 173, 178 (Iowa 1997).
In order to show that objections to the prosecutor's statements during closing arguments would have created a reasonable probability of a different outcome, Matlock must prove the alleged misconduct resulted in prejudice to such an extent that he was denied a fair trial. State v. Graves, 668 N.W.2d 860, 868 (Iowa 2003). In determining whether Matlock was prejudiced *257 we consider the following factors within the context of the entire trial:
(1) the severity and pervasiveness of the misconduct, (2) the significance of the misconduct to the central issues in the case, (3) the strength of the State's case, (4) the use of cautionary instructions or other curative measures, and (5) the extent to which the defense invited the misconduct.
Id. at 877.
Matlock complains about a number of statements made by the prosecutor during the State's closing argument. He argues the prosecutor improperly called him a liar, without actually saying the word "liar." He also asserts the prosecutor's remarks were demeaning and inflammatory. The prosecutor did suggest that Matlock's testimony was not believable, stated that Matlock's version of events was not "the truth" and was "ridiculous," and at one point equated the possibility that certain of Matlock's claims were true with the possibility that pigs will one day fly. Most of these comments were made in the context of the prosecutor's review of the evidence, and her assertions as to what the evidence reasonably showed.
"A prosecutor is entitled to some latitude during closing arguments in analyzing the evidence admitted at trial." Graves, 668 N.W.2d at 874. While it is improper for a prosecutor to call the defendant a liar, a prosecutor is free to craft an argument that includes reasonable inferences based on the evidence. Id. at 876. Additionally, when a case turns on which of two conflicting stories is true, a prosecutor is allowed to argue certain testimony is not believable. Id.
Although some of the prosecutor's statements were certainly inadvisable, and arguably inflammatory, in light of the foregoing standards we are not convinced they are tantamount to misconduct. We need not reach the question, however, as even if some of the prosecutor's remarks constituted misconduct, we find Matlock has failed to prove that he was prejudiced by his counsel not objecting to the prosecutor's statements. The misconduct Matlock complains about only occurred during closing arguments; it was not pervasive throughout the trial. We also note that the prosecutor never actually called Matlock a "liar." She merely argued that his testimony should not be believed. Furthermore, the State's evidence was strong in this case. Matlock admitted he attacked Riley, and his claim of self-defense was made less believable by the introduction of his other bad acts. Finally, although a curative instruction was not given, the jury was instructed that the arguments of counsel should not be considered evidence.
We conclude that Matlock failed to prove he was prejudiced by his counsel's actions to such an extent that he was denied a fair trial. Accordingly, we reject his claim of ineffective assistance of counsel.

V. Sentencing
Matlock argues the district court abused its discretion in imposing sentence. He claims the court erred when it took into consideration the appellate reversal of his prior civil commitment in sentencing him.[8] He argued this same issue in a companion case filed on this date.[9] Since this issue was discussed and decided in the companion case, we need not address it here. For the reasons set forth in the companion *258 case, we vacate Matlock's sentence and remand for resentencing.
CONVICTIONS AFFIRMED, SENTENCE VACATED, AND CASE REMANDED FOR RESENTENCING.
NOTES
[*] Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (2005).
[1] Barney is the name of a purple dinosaur on a children's television show.
[2] Neither Riley nor Jordan saw the object that Matlock used to cut Riley.
[3] Matlock assaulted Moses Childs on August 26, 2003. He assaulted Fred Burnside during the afternoon of September 7, 2003.
[4] In each case Matlock had been convicted of one count of willful injury and being a habitual offender, and one count of going armed with intent and being a habitual offender. The convictions in case number 117741 were the result of Matlock's assault on Moses Childs. The convictions in case number 116785 were the result of Matlock's assault on Fred Burnside.
[5] The court also concluded the evidence was relevant to the issue of knowledge and opportunity.
[6] To establish the offense of willful injury causing serious injury, the State was required to prove that Matlock specifically intended to cause a serious injury to the victim. See State v. Escobedo, 573 N.W.2d 271, 279 (Iowa Ct. App.1997). To establish the offense of going armed with intent, the State was required to prove that Matlock was armed with the specific intent to use his weapon against another person. See U.S. v. Gomez-Hernandez, 300 F.3d 974, 980 (8th Cir.2002).
[7] This concept is referred to as the doctrine of objective chances. Edward J. Imwinkelried, The Use of Evidence of an Accused's Uncharged Misconduct to Prove Mens Rea: The Doctrines Which Threaten to Engulf the Character Evidence Prohibition, 51 Ohio St. L.J. 575, 585 (1990). In short, the doctrine provides that an accused's involvement in similar acts gives rise to an intermediate inference that it is objectively improbable his involvement in so many similar incidents was in fact innocent, which in turn gives rise to the ultimate inference that the defendant acted with the necessary mens rea in committing the charged act. Id. at 595. Stated another way, "It flies in the face of common sense to assume that on all three occasions, the accused had an innocent state of mind; a coincidence of three, inadvertent, similar acts is objectively unlikely." Id. (footnote omitted).
[8] In re Matlock, No. 01-1094 (Iowa Ct.App. Feb. 12, 2003).
[9] State v. Matlock, No.04-405 (Iowa Ct.App. Aug. 17, 2005).