**STATE of Iowa, Appellee,**

v.

**Lewis Eugene ANDERSON III, Appellant.**

**No. 88–547.**

Supreme Court of Iowa.

Nov. 22, 1989.

Ann Fitzgibbons of Scalise, Scism, Sandre & Uhl, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Christie J. Scase and Thomas H. Miller, Asst. Attys. Gen., and Gerald N. Partridge, County Atty., for appellee..

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER and NEUMAN, JJ.

HARRIS, Justice.

Defendant Lewis Eugene Anderson III was convicted of first-degree burglary and first-degree murder for the fatal beating and stabbing of Ruth Patterson, and for stealing a small safe which belonged to her. We granted further review from a court of appeals decision reversing the convictions. The court of appeals majority based its reversal on two grounds: prosecutorial misconduct and juror misconduct. Because we find no reversible error we vacate the decision of the court of appeals and affirm the judgment of the trial court.

Violence and cruelty are hallmarks of murder cases. Nevertheless the facts here are uncommonly brutal. The victim, a seventy-three-year-old woman, was repeatedly beaten and stabbed while in an office she maintained in her home in rural Washington County. A safe, used in connection with a family seed business, was taken at

the time. It was later found on a rural dirt road in Washington County.

Overwhelming evidence pointed to Anderson. Several weeks before the murder he had been hired by the victim to supervise a bean-picking crew. He was later fired. A key evidentiary item was a .45 caliber Llama pistol which a prosecution witness identified as the weapon discharged at the scene. This pistol was obtained from Anderson's home after issuance of a search warrant. It was missing a safety plunger spring. A safety plunger spring for such a weapon was found at the murder site.

■ I. Anderson's strongest ground for reversal is associated with the pistol. Anderson elected to testify in his own defense. While cross-examining him the county attorney handed Anderson the pistol with the barrel pointed at the county attorney. The county attorney then said, "Don't point it at me." This prompted a motion for mistrial, the overruling of which is an assignment of error on appeal.

To engage in such a gesture and couple it with this comment by the prosecutor is to flirt recklessly with reversible error. The court of appeals majority did reverse on this ground, summing up the record this way:

> Before handing the gun to Anderson the gun was inspected a final time to be sure it was not loaded. In addition, Anderson was holding the gun in the exact manner which the prosecutor had handed it to him. The sophomoric ploy by the prosecutor was designed, at the very least, to transmit the prosecutor's concocted fear of the defendant to the jury or, at its worse, to attempt to put the jury into the victim's shoes by re-enacting the fears she may have felt when the defendant allegedly entered her home with the gun. In either case, the prosecutor's actions were disgraceful, and will not be tolerated in the courts of this state.

We join the court of appeals in strongly condemning the tactic of handing a witness a weapon and then portraying fear by reason of the witness's possession of it. Assuming it to be misconduct, the question becomes whether it deprived the defendant of a fair trial.

A prosecutor's misconduct will not warrant a new trial unless the conduct was "so prejudicial as to deprive the defendant of a fair trial." *State v. Lyons*, 210 N.W.2d 543, 549 (Iowa 1973); *State v. Harless*, 249 Iowa 530, 536, 86 N.W.2d 210, 213–14 (1957), *cert. denied*, 357 U.S. 908, 78 S.Ct. 1154, 2 L.Ed.2d 1158 (1958). The party claiming prejudice bears the burden of establishing it. *State v. Bishop*, 387 N.W.2d 554, 561 (Iowa 1986). It is not the prosecutor's misconduct which entitles a defendant to a new trial, but rather any resulting prejudice which prevents the trial from being a fair one. *State v. Webb*, 244 N.W.2d 332, 333 (Iowa 1976). Trial courts are vested with broad authority to determine whether prejudice actually results from misconduct. *State v. Ruble*, 372 N.W.2d 216, 218 (Iowa 1985). Appellate courts will overturn a trial court's ruling only upon finding an abuse of discretion. *Id.* An abuse of discretion appears only when it was "exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* In *State v. Vickroy*, 205 N.W.2d 748, 751 (Iowa 1973), we noted:

> The discretion is not, however, without limitations. It must be utilized fairly and impartially, not arbitrarily, by application of relevant, legal and equitable principles to all known or readily available facts of a given issue or cause to the end that justice may more nearly be effectuated.

We cannot find an abuse in denying Anderson's motion for a mistrial. We do not overlook the prosecutor's conduct, but must also consider the whole trial, including the court's admonition to the jury.

In denying Anderson's motion for mistrial the trial court warned the prosecutor that any further similar conduct would not be tolerated. The jury was then given this admonition:

> Ladies and gentlemen of the jury, I now admonish you to disregard the prosecution attorney's remark in connection with the pointing of the gun and the handling of the gun. It has gone out, it has been

stricken from this record, and you will remove it and completely and entirely disregard it in this record. Thank you.

It is of significance that the incident was isolated. In *Webb*, we said "...[P]rejudice results from *persistent* efforts to inject prejudicial matter before the jury." *Webb* at 333. (Emphasis in original.) Prejudice can, but usually does not, result from isolated prosecutorial misconduct. *Id.* It is also significant that the evidence against the accused is strong. *Id.* We have already suggested that the evidence of Anderson's guilt was ironclad. We are convinced that the prosecutor's inappropriate comment in no way contributed to the convictions.

It is axiomatic that a trial court is better equipped than appellate courts can be to determine whether prejudice occurs. This is because the trial court is a firsthand observer of both the alleged misconduct and any jury reaction to it. *See e.g. State v. Bishop*, 387 N.W.2d 554, 561 (Iowa 1986).

We find no abuse in the overruling of Anderson's motion for a mistrial.

■ II. Neither can we find abuse in the denial of Anderson's motion for a new trial. After verdicts were returned the prosecutor learned of a conversation between one of the jurors and a reserve deputy sheriff[1] during a weekend recess from deliberations. The prosecutor responded responsibly to this knowledge. He advised Anderson's counsel and the juror was deposed.

The juror stated that he and his family were attending a night basketball game and then related the following:

My wife and my youngest daughter and myself were entering the building and walking through the door toward the ticket counter when Bill Guenther, a reserve special deputy I believe they're called, kind of waved at me and I kind of waved back and kind of offhandedly he said, what's this not guilty shit. As I

remember, those were his exact words. At which time, I don't remember exactly what I said, but the gist of it would be, what do you mean, what's this not guilty shit. I don't understand, and then he said something to me along the lines of not wanting to be in my position type of a comment, at which time I just kind of—you know, I was kind of mad at him so I just kind of ended the conversation, bought my ticket, and walked in and that was pretty much the extent of it. It was a brief, probably ten second, fifteen second, conversation, very brief.

The juror did not believe Guenther was trying to persuade him in his deliberations, feeling it was an offhand and unthinking remark. The juror remembered the judge's admonition that jurors were not to discuss the case, and it is clear that he complied with the admonition. He did not relate the incident to other jurors until after they had signed the final verdict on Monday morning. The juror stated unequivocally that he was not persuaded in any way by the comment, and had in fact decided Friday night prior to the incident what his vote would be.

It is somewhat misleading to label the incident as *juror* misconduct. The juror here was confronted with an impropriety from someone outside the court system and flawlessly discharged his responsibility under the court's admonition. Of course conduct by an outsider, improperly influencing a juror, can be grounds for a new trial. *See State v. Carey*, 165 N.W.2d 27, 28–29, 18 (Iowa 1969). The test for considering misconduct by another juror was explained in *State v. Cullen*, 357 N.W.2d 24, 27 (Iowa 1984).

A new trial need not result from misconduct unless there is a reasonable probability that the misconduct did in fact influence the jury in its deliberations. *State v. Wells*, 437 N.W.2d 575, 580–81 (Iowa 1989). It is clear that the trial court acted easily within its discretion in denying Anderson's motion for a new trial. The juror was

---

**1.** Reserve peace officers are authorized by Iowa Code chapter 8OD (1989). They serve without compensation as volunteer, nonregular peace officers at the discretion of a chief of police, sheriff, or agency head to whom they are assigned.

uninfluenced by the comments of the outsider. The other jurors were unaware of it until the verdict was reached.

III. The court of appeals rested its reversals on the matters we have already discussed and hence did not reach Anderson's other assignments of error. These include a trial court ruling which rejected Anderson's motion to suppress as involuntary statements he made to investigating officers, another ruling rejecting Anderson's motion in limine, the denial of a motion for change of venue, and the giving of a jury instruction over Anderson's objections. We have considered these assignments and find them without merit. These matters are all controlled by settled principles of law and to discuss them would yield nothing of precedential value. Counsel are commended for thoughtful and scholarly briefs.

DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.