# IN THE COURT OF APPEALS OF IOWA

No. 13-0794
Filed July 16, 2014

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**WARREN EDWARD PURVIS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Cerro Gordo County, Rustin T. Davenport, Judge.

        A defendant appeals the district court's denial of his motion to suppress and his motion for mistrial. **AFFIRMED.**

        Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Kyle Hanson, Assistant Attorney General, Carlyle D. Dalen, County Attorney, and Rachel Gibney, Assistant County Attorney, for appellee.

        Heard by Danilson, C.J., and Potterfield and McDonald, JJ.

**DANILSON, C.J.**

Warren Purvis appeals his convictions for first-degree sexual abuse, willful injury resulting in serious injury, and domestic abuse assault impeding breathing or circulation of blood causing bodily injury. He contends his statements made at home and at the police station should be suppressed. He maintains the district court wrongly denied his motion to suppress his statements made in his home because they were given involuntarily and while he was in custody without the benefit of an explanation of his *Miranda* rights.[1] Purvis contends his statements made at the police station were also involuntary and he did not knowingly and intelligently waive his *Miranda* rights. He also maintains the court abused its discretion in denying his motion for mistrial. Specifically, Purvis claims the State's witness testified about Purvis being held in jail before trial, in violation of the court's ruling on the motion in limine, and this evidence was so prejudicial as to deprive Purvis of a fair trial. Because we find Purvis made voluntary statements at his home and the police department; was not in custody during the home interrogation; and knowingly, intelligently, and voluntarily waived his *Miranda* rights before making incriminating statements at the police station, the district court properly denied his motion to suppress. We also find the one comment by a witness about Purvis being in jail was cured by admonishing the jury and through jury instruction, so the district court did not abuse its discretion by denying his motion for mistrial. We affirm.

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).

**I. Background Facts and Proceedings.**

On December 23, 2012, Patricia Pope and Purvis were in an intimate relationship and living together in Pope's home. At some point in the evening, Pope posted a message on Facebook, stating, "Anyone, please call police and have them come to [Pope's address]. Please help me now." One of Pope's friends called the police, and the police officers then proceeded to the address for a welfare check.

The police arrived to Pope's home at approximately 6 p.m. Purvis answered the door when the police officers knocked. The officers testified they heard a faint female cry for help upon entering the residence. They found Pope in the back bedroom, lying in bed. She had bruises and marks on her face and chest. Pope told one of the officers Purvis had physically and sexually assaulted her. She said Purvis had strangled her and bit her. She told officers she thought she had lost consciousness twice. The police called the paramedics, who then transported Pope to the hospital in the ambulance.

As one of the officers talked with Pope in the bedroom, another talked with Purvis in the living room. The officer did not advise Purvis of his *Miranda* rights. Purvis was not placed in restraints or told he was under arrest. Purvis sat on the living room couch as he talked with Officer Eernisse. They spoke for approximately ten minutes before a taking a short break. Purvis and Officer Eernisse then spoke for approximately thirty minutes more. Purvis admitted to Officer Eernisse that he fought with Pope and that he slapped her a couple times. Purvis told the officer he and Pope had consensual sex even though they had been fighting. During the questioning, Purvis told the officer he had taken twenty

Lortab pills because he wanted to kill himself. The officers called an ambulance, and Purvis was transported to the hospital.

Purvis was examined at the hospital at approximately 7:20 p.m. by Dr. Singh. The doctor noted Purvis was drowsy, but that he could talk and was capable of being alert. He was able to answer the doctor's questions. Dr. Singh noted a "very minimal" odor of alcohol emanating from Purvis. Lab results showed his blood alcohol content was .073 and urine drug screen results showed he had opiates in his system. Dr. Singh testified the opiates would make a person drowsy. Purvis was released from the hospital at approximately 10:50 p.m.

After Purvis was discharged from the hospital, he was transported to the police station. Purvis was placed in an interview room and given water. He was not handcuffed or restrained. Purvis was read his *Miranda* rights and asked if he understood them. He acknowledged that he did. He was then told to read the waiver form, which listed the *Miranda* warnings and stated:

> **I have read this statement and understand my rights**. I am willing to make a statement and answer questions. I do not want to consult an attorney or have one present at this time. I understand I may decide at anytime to exercise these rights and decline to answer any further questions or make a statement.

Purvis signed and dated the form before talking with the officers.

Purvis was able to provide Officers Hugi and Kemna with biographical information, but he originally told officers he could not remember the events of the day. The officers continued talking to Purvis for approximately forty minutes. The officers then left Purvis in the interview room and "gave him a break." Officer Eernisse, who had talked to Purvis in the home, then joined the other three in the

interview room. Officer Eernisse reminded Purvis what he said during their discussion in the home. Purvis admitted he forced Pope to have sex with him after he physically assaulted her. The interview lasted for approximately thirty minutes. Purvis then agreed to provide a written statement, and the officers left the room.

Purvis filled out a cover form, which stated "This statement is freely and voluntarily given without promises, threats or coercion. . . ," and signed his name. He handwrote a statement, which read, in part:

> So I grabbed her by the throat and hit her several times. She grabbed my necklace and tore it off of me. So I bit her nose then she bit my arm so then I leaned on her throat with my forearm. Then I hit her in the chest about 3 or 4 times. Then hit her in the face a few times. Then made her have sex with me. After that I told her that I wanted to die. She said that she wanted to also. She took some pills and dumped the rest into my hand. I went to the fridge and got 2 beers and sat down on the floor. She called into work sick. Then I fell asleep, when I woke up I told her that the pills weren't working. She said, "Take some of the Codine." So I did. Then I fell asleep again. When I woke up, the police were knocking on the door. I regret doing that!

On January 4, 2013, Purvis was charged with first-degree sexual abuse, willful injury resulting in serious injury, and domestic abuse assault impeding breathing or circulation of blood causing bodily injury.

On March 4, 2013, Purvis filed a motion to suppress the statements he made to the police both at the home and at the police station. The district court held a hearing on the motion on March 18, 2013. Following the hearing, the court denied the motion. The court concluded Purvis was not in custody in the home when he voluntarily made incriminating statements to the police, so no *Miranda* warnings were necessary. The court also concluded Purvis knowingly,

intelligently, and voluntarily waived his *Miranda* rights before voluntarily making incriminating statements at the police station.

Before the jury trial, Purvis filed a motion in limine requesting any testimony that he was "incarcerated or in jail" be excluded from trial. At the hearing on the motion, the State did not object to the motion, and the district court granted it.

A jury trial was held on the matter on April 2–5, 2013. Pope testified at trial that Purvis physically and sexually assaulted her. She also testified about her resulting injuries and ongoing medical complications, namely dizziness, post-traumatic stress disorder (PTSD), limited use of one of her hands, and partial loss of hearing in one ear. Medical personnel who treated Pope on the night of December 23 also testified about the sexual assault examination which revealed skin irritation around Pope's vagina and an abrasion on her labia. A CT scan showed, among other things, a broken nose and subarachnoid hemorrhaging, also known as a brain bleed. Pope's injuries required her to spend two days in the intensive care unit.

Pope's primary physician, Dr. Mark Mahoney, testified about Pope's ongoing symptoms. As Dr. Mahoney testified about Pope's symptoms of PTSD, he stated, "She was anxious. She was having trouble sleeping. She was afraid to go back into her home. She was afraid she'd get assaulted again even though the [assailant] was in prison, in jail." Purvis immediately objected, and the court held a short hearing outside of the presence of the jury. Purvis moved for mistrial, claiming the State had violated the court's ruling on the motion in limine. The court overruled Purvis's motion for mistrial. Once the jury returned, the court

admonished the jury, stating, "I'm going to instruct to you disregard the last answer of the witness."

Purvis testified in his own defense at trial. He denied forcing Pope to have sex with him, but admitted he "beat her up." He testified he did not recall what specific injuries he caused.

Because of Dr. Mahoney's comment about Purvis in jail, the court provided a curative instruction for the jury, which stated in part, "Warren Edward Purvis is presumed innocent and not guilty. The presumption of innocence requires you to put aside all suspicion which might arise from the arrest, charge, or present situation of the defendant."

The jury found Purvis guilty of each of the three charges against him. Purvis filed a motion for new trial and a motion in arrest of judgment, which the State resisted.

On May 10, 2013, the district court denied Purvis's motions. On the same day, Purvis was sentenced to serve a term of life imprisonment without parole for his conviction of first-degree sexual abuse. He was also sentenced to a term of imprisonment not to exceed ten years for willful injury resulting in serious injury and a term of imprisonment not to exceed five years for domestic abuse assault impeding breathing or circulation of blood causing bodily injury. The sentences were all ordered to run concurrently.

Purvis appeals the district court's denial of his motion to suppress. He also appeals the district court's denial of his motion for mistral.

**II. Standard of Review.**

We review a district court's refusal to suppress statements allegedly made in violation of constitutional guarantees de novo. *State v. Palmer*, 794 N.W.2d 840, 844 (Iowa 2010). We make an independent evaluation of the totality of the circumstances as shown by the entire record. *Id.* "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *Id.* We consider both the evidence introduced at the suppression hearing as well as the evidence introduced at trial. *Id.*

We review the district court's denial of a motion for mistrial for an abuse of discretion. *See State v. Callender*, 444 N.W.2d 768, 770 (Iowa Ct. App. 1989). The court is found to have abused its discretion only when the defendant shows prejudice which prevented him from having a fair trial. *Id.*

**III. Discussion.**

**A. Motion to Suppress.**

In this case, the State had the burden to prove Purvis committed first-degree sexual abuse,[2] willful injury resulting in serious injury,[3] and domestic abuse assault impeding breath or circulation of blood causing bodily injury.[4]

---

[2] Iowa Code section 709.2, states, "A person commits sexual abuse in the first degree when in the course of committing sexual abuse the person causes another serious injury."

[3] Iowa Code section 708.4(1) states, "Any person who does an act which is not justified and which is intended to cause serious injury to another commits willful injury, which is punishable as . . . [a] class "C" felony, if the person causes serious injury to another."

[4] Iowa Code section 708.2A(5), states:

> For a domestic abuse assault committed by knowingly impeding the normal breathing or circulation of the blood of another by applying pressure to the throat or neck of the other person or by obstructing the

Purvis asserts the district court erred by admitting several statements he made to police officers. He claims the statements made to the police officers while in his home should be suppressed as they were made as a result of custodial interrogation without a *Miranda* warning. Purvis also claims, in the alternative, that if he was not in custody, his statements to the police officers were not given voluntarily. Additionally, Purvis claims his statements made in the police station following his waiver of *Miranda* rights should also be suppressed because the waiver was not knowingly, intelligently, and voluntarily made, and even if properly waived, his statements were not voluntarily given.

### 1. General Principles.

"*Miranda* warnings protect a suspect's privilege against self-incrimination embodied in the Fifth Amendment by informing the suspect of his or her right to remain silent and right to the presence of counsel during questioning." *Palmer*, 791 N.W.2d at 844 (Iowa 2010) (citing *Miranda*, 384 U.S. at 444–45). If, as here, the defendant challenges the admission of statements made after a waiver of *Miranda* rights, the State has the burden to prove by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *State v. Ortiz*, 766 N.W.2d 244, 252 (Iowa 2009). "For a waiver to have been made knowingly and intelligently, 'the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *Id.* at 251 (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). "[T]he relinquishment of the right must have

---

nose or mouth of the other person, and causing bodily injury, the person commits a class "D" felony.

been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421. "Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Id.* Courts use an objective standard to determine whether a defendant's waiver is voluntary, knowing, and intelligent. *State v. Hajtic*, 724 N.W.2d 449, 453–54 (Iowa 2006).

> Factors bearing on voluntariness include:
>
> the defendant's age, experience, prior record, level of education, and intelligence; the length of time the defendant is detained or interrogated; whether physical punishment was used, including deprivation of food or sleep; the defendant's ability to understand the questions; the defendant's physical and emotional condition and his reaction to the interrogation; whether any deceit or improper promises were used in gaining the admissions; and any mental weakness the defendant may possess.

*State v. Hodges*, 326 N.W.2d 345, 348 (Iowa 1982). The voluntary nature of a statement depends on the totality of the circumstances. *State v. Buenaventura*, 660 N.W.2d 38, 46 (Iowa 2003). Generally, "[s]tatements are voluntary if they were the product of an essentially free and unconstrained choice, made by the defendant whose will was not overborne or whose capacity for self-determination was not critically impaired." *State v. Payton*, 481 N.W.2d 325, 328 (Iowa 1992).

**2. Statements at Purvis's Home.**

Purvis maintains his in-home statements should have been suppressed. He claims the statements were made as a result of custodial interrogation without a *Miranda* warning. Purvis also claims, in the alternative, that even if he was not in custody, his statements to the police officers were not given voluntarily.

*a. Lack of* **Miranda** *Warning.* "Any statements made by a suspect in response to a custodial interrogation are inadmissible unless there has been an adequate recitation of the *Miranda* warning and a valid waiver by the suspect of his or her rights." *Id.* *Miranda* warnings are not required unless there is both custody and interrogation. *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984).

The issue at hand is whether Purvis was in custody at the time of the interrogation. The custody determination depends on the objective circumstances of the interrogation, not on subjective views harbored either by the officer or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323 (1994). We apply a four-factor test to assess whether a reasonable person in the defendant's position would believe that he was in custody. *State v. Countryman*, 572 N.W.2d 553, 557 (Iowa 1997). "These factors include: (1) the language used to summon the individual; (2) the purpose, place, and manner of interrogation; (3) the extent to which the defendant is confronted with evidence of [his] guilt; and (4) whether the defendant is free to leave the place of questioning." *Id.* Generally, an in-home interrogation is not custodial for purposes of *Miranda*. *State v. Evans*, 495 N.W.2d 760, 762 (Iowa 1993).

Here, Purvis was at his home, seated on a couch in the living room with the television on, while he was discussing with officers what had happened. We acknowledge the officers' questioning became confrontational to a degree, and at one point one of the officers instructed Purvis to "sit there don't move." Purvis was also confronted with some evidence of his guilt. However, after listening to the audio recording, we conclude the officers were trying to jog Purvis's memory of what had happened to cause the alleged victim to be hospitalized. Purvis was

in his own home, not under arrest, and was not arrested but was hospitalized. He was not summoned to the location. He was not put into restraints. The officers were present because they heard the cries for help of the victim. The interview was brief—one segment of ten minutes and a second segment of about thirty minutes. *See State v. Smith*, 546 N.W.2d 916 924 (Iowa 1996) (concluding interviews that were twenty to forty minutes in duration were "rather brief"). The audio reflects that at times two officers asked questions but only one officer questioned Purvis the balance of the interview. It is difficult to find that Purvis experienced a coercive atmosphere when one of the officers stated to him, "You need to stay awake." We conclude Purvis was not in custody and as a result, the officers were not required to provide him with the *Miranda* warning.

**b. Voluntariness of Statement at Home.** As the Supreme Court has recognized, "Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police office is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). At the time of his statements, Purvis was fifty-eight years old and was a high school graduate. He was not handcuffed and was not subjected to any form of physical punishment. Although Officer Eernisse spoke with Purvis for approximately forty minutes[5] without reading him his *Miranda* rights, neither the environment nor the manner of the questioning was deliberately coercive. The questioning took place in the evening while Purvis sat on his living room couch. Purvis was not

---

[5] Officer Eernisse spoke with Purvis for approximately ten minutes before taking a short break. The officer then spoke with Purvis for another thirty minutes in the home before Purvis was transported to the hospital.

handcuffed, and he was not told he was under arrest. One of the officers did tell Purvis not to move as Pope was taken out of the home by medical personnel, but otherwise his movements were not restricted. Officer Eernisse did not make any improper promises or threats while speaking with Purvis. Although Purvis was under the influence of drugs and alcohol, he took the substances of his own volition. *See State v. Countryman*, 572 N.W.2d 553, 558–59 (Iowa 1997) ("It was of her own volition that [the defendant] ingested any drugs affecting her. The fifth amendment guarantees do not protect a defendant from his [or her] own compulsions or internally-applied pressures which are not the product of police action." (internal quotations omitted)); *see also State v. Wilson*, 264 N.W.2d 614, 614–15 (Iowa 1978) ("The mere fact one is under the influence of a drug at the time of making an inculpatory statement does not render the statement involuntary, although it is a proper factor for the jury to consider in weighing the evidence."). Moreover a precautionary examination of Purvis by Dr. Singh after the interview confirmed his ability to communicate and intelligently answer questions. After the examination he was discharged from the hospital. Moreover, the audio recording reflects that he intelligently responded to the questions posed to him. Accordingly we conclude Purvis's statements at home were made voluntarily.

### 3. Statements at Police Department.

Purvis also maintains his statements at the police station should have been suppressed because his waiver of his *Miranda* rights was not knowing, intelligent and voluntary. He also claims his statements were not voluntarily given.

***a. Waiver of* Miranda *Rights.*** Purvis claims his waiver was not knowing, intelligent, and voluntary because of the time of night it was given and his impairment due to alcohol and opiates. The video and audio tape of the *Miranda* proceedings aid us in our review.

It was approximately 11 p.m. when Purvis waived his rights, and he did tell officers he was tired before doing so, but the video and audio reveal Purvis was coherent and answering questions appropriately. Furthermore, although Purvis claims he was impaired due to alcohol and opiates, the physician notes from approximately 7:30 p.m. state Purvis was "fully alert and awake and in no distress." His blood alcohol content at that time, more than three hours before waiving his rights, was .073. At the station, Purvis was read his *Miranda* rights and asked if he understood them. He answered that he did. The officers then presented Purvis with a waiver form and told him to read it. The officers asked Purvis if he could see the form "all right." Purvis did not verbally respond, but he then signed the form in the appropriate place. "A written waiver of constitutional rights is not sufficient on its own to establish the waiver as knowing, intelligent, and voluntary," but it is "strong proof of its validity." *State v. Hajtic*, 724 N.W.2d 449, 453 (Iowa 2006). We find Purvis's waiver of his *Miranda* rights was valid.

***b. Voluntariness of Statements at Police Department.*** Using the same factors and considering the totality of the circumstances, we also find Purvis's statements at the police department were voluntarily made. *See Buenaventura*, 660 N.W.2d at 46–47. At the time of his statements at the police department, Purvis was not handcuffed and was not subjected to any form of physical punishment. The officers provided him with water, and he did not complain he

was hungry or thirsty during the interview. Purvis was under the influence of alcohol and drugs, but testing from over three hours prior showed his blood alcohol content was below the legal limit required to drive a vehicle, and the attending physician described him as "fully alert and awake and in no distress." *See State v. Wilson*, 264 N.W.2d 614, 614–15 (Iowa 1978) ("The mere fact one is under the influence of a drug at the time of making an inculpatory statement does not render the statement involuntary, although it is a proper factor for the jury to consider in weighing the evidence."). Again, Purvis ingested the drugs and alcohol of his own volition. *See Countryman*, 572 N.W.2d at 558–59. Purvis was sufficiently coherent and able to answer questions appropriately. Purvis's ability to both talk and answer questions intelligently were also observed by Dr. Singh during her examination of Purvis at the hospital. Immediately after providing a verbal statement to the police, Purvis prepared a written statement outside of the officers' presence. As the district court noted in its ruling on the motion to suppress, the written "statement is legible, organized into sentences and written chronologically." We find the district court properly denied Purvis's motion to suppress incriminating statements made at the police station.[6]

**B. Motion for Mistrial.**

Purvis contends the district court erred in denying his motion for a mistrial, resulting in prejudice to him. Purvis's objection to the testimony was based upon

---

[6] The district court's ruling on Purvis's motion to suppress does not address the issue of whether Purvis's initial unwarned statements taint his latter statement at the police station, and therefore the issue is not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.") Notwithstanding, the statements made by Purvis are not inadmissible under the principles recited in *Oregon v. Elstad*, 470 U.S. 298, 314 (1985).

a motion in limine, which the court had granted. The motion requested any testimony mentioning Purvis's incarceration be excluded. Despite the limine motion, one prosecution witness mentioned the fact Purvis was incarcerated. At trial, Dr. Mahoney outlined the symptoms of PTSD Pope exhibited following the incident. During his answer, Mahoney stated, "She was anxious. She was having trouble sleeping. She was afraid to go back into her home. She was afraid she'd get assaulted again even though the [assailant] was in prison, in jail." Purvis objected and made a motion for a mistrial. The court overruled the motion and then instructed the jury to disregard the witness's last answer.

The district court has broad discretion in ruling on a motion for a mistrial. *State v. Keys*, 535 N.W.2d 783, 785 (Iowa Ct. App. 1995). "When improper evidence has been promptly stricken and the jury admonished to disregard it," as the court did in this case, "there has been no erroneous ruling by the district court." *See State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998). The ruling can only be reversed in the "extreme instance" where the manifest prejudicial effect on the jury could not be erased by the admonishment of the court, thus denying the defendant a fair trial. *Id.* Evidence is unfairly prejudicial if it appeals to the jury's sympathies, arouses a sense of horror, triggers and instinct to punish, or otherwise disposes the jury to base its decision on something other than the propositions presented. *State v. White*, 668 N.W.2d 850, 854 (Iowa 2003). Only if the prejudicial testimony was not dissipated by the court's order can the denial of a mistrial be reversed. *State v. Ware*, 205 N.W.2d 700, 705 (Iowa 1973).

Purvis also argues the testimony of his incarceration is prejudicial under a prior bad acts theory. Evidence of other crimes, wrongs, or acts is not

permissible to establish a defendant's criminal disposition and thus the likelihood the defendant committed the crime in question. Iowa R. Evid. 5.404(b); *State v. Reynolds*, 765 N.W.2d 283, 289 (Iowa 2009). However, it may be permissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Iowa R. Evid. 5.404(b). The language in the rule ("such as . . . "), makes it clear this list was not meant to be exhaustive. *Id.*

However, the testimony in question suggested Purvis was in jail pending the current charge, not that Purvis was incarcerated for a prior, unrelated offense. Even if we grant credence to the bad acts theory, the testimony in question is still not sufficiently prejudicial to require a mistrial because the prejudice could be dissipated by the court's admonishment to the jury. *See Ware*, 205 N.W.2d at 705. The witness's single reference to Purvis's incarceration was unsolicited by the prosecution, and neither the witness nor the State attempted to use Purvis's incarceration to prove his culpability. *See State v. Newell*, 710 N.W.2d 6, 32 (Iowa 2006). The jury was admonished by the court to ignore the testimony. "A jury is presumed to follow the instructions of the court." *State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006). As the State points out, astute jurors might have already suspected Purvis was in jail pending the current charge.

All of the above factors support the conclusion that the single reference to Purvis's incarceration did not unfairly prejudice the defendant to the point where the court's admonishment would not have countered any prejudice. The single statement does not arise to the "extreme case" standard. *Jackson*, 587 N.W.2d

at 766.  Furthermore, "It is axiomatic that a trial court is better equipped than appellate courts can be to determine whether prejudice occurs."  *State v. Anderson*, 448 N.W.2d 32, 34 (Iowa 1989).  This is because the trial court can observe firsthand both the alleged misconduct and the jury's reaction to it.  *Id.*

For these reasons, the court did not abuse its discretion in denying Purvis's motion for a mistrial.

**IV. Conclusion.**

Although Purvis made in-home statements without receiving *Miranda* warning, we conclude he was not in custody and his statements were voluntarily made.  Because they were voluntarily made and Purvis later knowingly, intelligently waived his *Miranda* rights, his later voluntary statements made at the police department were properly admitted at trial.

After considering the solitary reference to Purvis's pretrial confinement in the context of the entire trial and all of the properly admitted evidence, we find the trial court did not abuse its discretion when concluding the statement was not so prejudicial as to deprive Purvis of a fair trial.  We affirm.

**AFFIRMED.**