# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1997
Filed April 1, 2026

———————————

**State of Iowa,**
Plaintiff–Appellee,

v.

**Jacob Ryan Ballard,**
Defendant–Appellant.

———————————

Appeal from the Iowa District Court for Dallas County,
The Honorable Charles C. Sinnard, Judge.

———————————

**AFFIRMED**

———————————

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Katherine Wenman, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Schumacher, J.

**SCHUMACHER, Judge.**

Following a jury trial over the death of his one-year-old son, Jacob Ballard appeals his conviction of child endangerment resulting in death in violation of Iowa Code sections 726.6(1)(a), 726.6(4), and 726.6(5) (2024), asserting there was insufficient evidence to support the conviction. He also argues the State engaged in prosecutorial misconduct and the district court abused its discretion in admitting evidence of his substance-use treatment. Upon our review, we affirm.

### I.      Background Facts & Proceedings.

In late April 2023, Ballard, a recovering addict, forgot to set an alarm and woke up late, missing his methadone treatment appointment. He left his apartment to deliver for DoorDash and texted a dealer, requesting seven fentanyl pills. Ballard obtained those pills and returned to the apartment later that afternoon. He placed the sandwich bag of pills on his bedroom desk, within reach of J.B., his one-year-old son. Ballard later found J.B. with the sandwich bag in his hands and three or four pills on the floor. One pill was wet, indicating it had been in J.B.'s mouth. Ballard thought there had been three or four pills in the bag but he was not sure. Ballard stated he flushed the remaining pills down the toilet after finding J.B. with them.

Ballard alerted his fiancée about what had occurred and they decided to monitor J.B. rather than call emergency services because J.B. was "being normal." Later, Ballard and his fiancée took J.B. to Walmart for groceries, returning home around 10:30 p.m. They put J.B. to bed and checked on him periodically, determining that he seemed okay. When they checked on him the last time, J.B. was limp, had liquid in his throat, and his toes and fingers were blue. Ballard had previously Googled whether they could administer

Narcan to a child. He attempted to give a dose to J.B. after they found him unresponsive.

After the attempt to administer the dose, the parents called 911 at around 12:20 a.m. and began performing CPR with the assistance of the 911 operator. When emergency services arrived at the apartment, J.B. was unresponsive, not breathing, and had no pulse. J.B. was transported to the hospital and pronounced deceased at 1:30 a.m. The cause of death was determined to be acute fentanyl toxicity.

Ballard met with law enforcement two days later. He informed the officers that he induced J.B. to vomit by sticking his fingers down the child's throat after finding him with the pills, assuming J.B. had placed one in his mouth. The vomit appeared to be only baby formula. Ballard again stated he and his fiancée, while concerned, did not call 911 for several hours because J.B. appeared to be fine. Ballard repeated that J.B. was acting normally during the trip to Walmart.

The State charged Ballard with child endangerment resulting in death. A jury convicted Ballard as charged. Ballard appeals.

## II.    Analysis.

### (A)    Sufficiency of the Evidence.

Ballard asserts there was insufficient evidence to convict him of child endangerment causing death under either of the two alternative theories proffered by the State. He focuses on a lack of connection between his purchase of the pills and the creation of a risk of harm to J.B. and maintains that he "did not willfully deprive J.B. of medical care."

We "review[] sufficiency-of-evidence claims for the correction of errors at law." *State v. Swartz*, 7 N.W.3d 756, 763 (Iowa 2024). If a conviction is supported by substantial evidence, we will not disturb the finding of guilt. *Id.* at 764. "Substantial evidence is evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *Id.* (citation omitted). When reviewing these claims, we view "the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence." *Id.* (cleaned up). When a "defendant does not object to the relevant jury instruction, the instruction is 'the law of the case for purposes of reviewing the sufficiency of the evidence.'" *Id.* (citation omitted). The relevant jury instructions which the State had to prove in this case are as follows:

> In the trial information, Jacob Ballard is charged with committing Child Endangerment Resulting in Death under two different theories. Under the first theory, the State must prove all of the following elements:
>
> 1. On or about April 29th through April 30, 2023, Jacob Ballard was either
>
> a. the parent, guardian, person having custody or control of [ J.B.];
>      or
>
> b. a member of the household in which [ J.B.] resided.
>
> 2. [ J.B.] was under the age of fourteen years.
>
> 3. Jacob Ballard acted with knowledge that he was creating a substantial risk to [ J.B.]'s physical health or safety.
>
> 4. Jacob Ballard's act resulted in death to [ J.B.].
>
> . . . .
>
> Under the alternative theory, the State must prove all the following elements:

4

1. On or about April 29th through April 30, 2023, Jacob Ballard was either:

a. the parent, guardian, person having custody or control of [J.B.]; or

b. a member of the household in which [J.B.] resided.

2. [J.B.] was under the age of fourteen years.

3. Jacob Ballard willfully deprived [J.B.] of necessary healthcare appropriate to [J.B.]'s age.

4. Jacob Ballard was reasonably able to provide necessary healthcare.

5. As a result [J.B.] suffered substantial physical harm.

6. The harm to [J.B.] was death.

Concerning the first alternative, the "substantial risk theory," Ballard contests that the State proved elements three and four beyond a reasonable doubt. Ballard argues that he did not know he was creating a substantial risk to J.B., and if he did create the risk, it did not cause J.B.'s death. He points to the time between the implied ingestion of the fentanyl by J.B. and the child's death.

"Substantial risk" within the framework of child endangerment is defined by our courts as "[t]he very real possibility of danger to a child's physical health or safety." *State v. Folkers*, 941 N.W.2d 337, 339 (Iowa 2020) (citation omitted). And within "the context of parental drug use, the State must show some nexus between the drug use and the creation of a substantial risk of harm to the child." *Id.* The risk "needs to be real or identifiable as opposed to speculative or conjectural." *Id.*

The evidence reflects that Ballard, in multiple interviews with law enforcement, admitted he purchased the pills and brought them into the

apartment. His actions, including inducing J.B. to vomit, googling to find out if Narcan can save a one-year-old, and statements to law enforcement, indicated that he was aware that fentanyl is a dangerous substance. Ballard left the pills on his desk, where J.B. had previously been able to reach items. The evidence demonstrates that J.B. died from acute fentanyl toxicity.

Ballard's main argument concerning the substantial risk theory is that because there was a large amount of fentanyl found in J.B.'s system, and he did not show symptoms before or during the trip to Walmart, then J.B. must have obtained the fentanyl from another source. But the jury was free to reject Ballard's timeline and theory based on other evidence. *See State v. Mathis*, 971 N.W.2d 514, 519 (Iowa 2022). And Ballard failed to put forward any evidence of an alternative source of the fentanyl that J.B. ingested.

Viewing the evidence in a light favorable to the State, we find there was substantial evidence to convince the jury of Ballard's guilt under the substantial risk theory. *See Swartz*, 7 N.W.3d at 764. Because we find there was sufficient evidence that Ballard "acted with knowledge that he was creating a substantial risk to [ J.B.]'s physical health or safety," we need not determine whether substantial evidence supports the State's alternative theory that Ballard "willfully deprived [ J.B.] of necessary healthcare." *See* Iowa Code § 814.28 ("[A]n appellate court shall not set aside or reverse [a general verdict] on the basis of a defective or insufficient theory if one or more of the theories presented and described in the . . . jury instruction is sufficient to sustain the verdict on at least one count.").

## (B)   Prosecutorial Misconduct.

Ballard asserts the State engaged in prosecutorial misconduct during closing arguments by stating that after J.B. was taken to the hospital, Ballard

"[d]idn't go the hospital for his child. Selfish decision." The State argues that error was not preserved on this issue. We agree.

"We review a district court's decision on claims of prosecutorial misconduct for abuse of discretion, which occurs when 'a court acts on grounds clearly untenable or to an extent clearly unreasonable.'" *State v. Coleman*, 907 N.W.2d 124, 134 (Iowa 2018) (citation omitted).

To obtain relief based on prosecutorial misconduct occurring during closing arguments, "a defendant 'must make timely and proper objection to the offending argument. Unless objection is made at the time of the argument, the defendant has waived his right to complain.'" *State v. Smith*, No. 18-2052, 2020 WL 376554, at *3 (Iowa Ct. App. Jan. 23, 2020) (quoting *State v. Romeo*, 542 N.W.2d 543, 552 (Iowa 1996)). A defendant need not "interrupt closing argument with an objection" and can timely preserve error if objections are "urged at close of argument and in a motion for mistrial made before submission to the jury." *Romeo*, 542 N.W.2d at 552 n.5 (citation omitted).

While Ballard properly objected to the statement at the close of the State's argument and moved for mistrial, his objection was based on lack of notice to counsel, not prosecutorial misconduct. While defense counsel did maintain that "[t]he only reason that statement was made was to elicit an emotional response from the jury," the record shows the objection was grounded in an alleged lack of notice to the defense that the statement would be made: "We had no notice. Had I had notice that this was going to be utilized against my client, I would have asked [a law enforcement witness] whether my client was allowed to visit his kid or not . . . ." And, although Ballard raised the prosecutorial-misconduct issue in his motion for new trial,

it should have been raised "before submission to the jury." *Id.* We hold that error was not preserved on this issue. *See Smith*, 2020 WL 376554, at *4.

Even if Ballard had preserved the prosecutorial-misconduct issue, we do not find that the statement prejudiced Ballard. *See id.* To prove prosecutorial misconduct, there must be proof of misconduct and that "the misconduct resulted in prejudice to such an extent that the defendant was denied a fair trial." *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003). "[I]t is the prejudice resulting from the misconduct, not the misconduct itself that entitles a defendant to a new trial." *Id.* (citation omitted).

> In determining prejudice the court looks at several factors "within the context of the entire trial." We consider (1) the severity and pervasiveness of the misconduct; (2) the significance of the misconduct to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or curative measures; and (5) the extent to which the defense invited the misconduct.

*Id.* (internal citations omitted).

Even if we were to find that misconduct occurred, which we do not, the statement in the State's closing argument was not significant to "the central issues of the case," which were whether Ballard knowingly created substantial risk to J.B. or if he willfully deprived J.B. of necessary healthcare. Also, "the strength of the State's evidence" weighs against a finding of prejudice resulting from prosecutorial misconduct. *See id.* And supposing the alleged misconduct was severe, it was an isolated statement and not so pervasive as to result in prejudice. *See State v. Anderson*, 448 N.W.2d 32, 34 (Iowa 1989) (observing that prejudice does not usually "result from isolated prosecutorial misconduct").

Regarding a curative instruction, the court offered to instruct the jury, reminding them that closing arguments are not evidence, but defense counsel

refused such an instruction. Lastly, while the defense did not invite the misconduct, the other elements weigh against prejudice. *See Graves*, 668 N.W.2d at 869. Ballard's claim of prosecutorial misconduct also fails on the merits, and the district court did not abuse its discretion in its findings on the issue.

### (C) Admission of Ballard's Methadone Treatment.

Lastly, Ballard argues the district court abused its discretion in allowing the State to present evidence of his missed methadone treatment the morning of J.B.'s death. The State asserts this issue is not preserved for our review.

We review the district court's evidentiary ruling for abuse of discretion. *State v. Thoren*, 970 N.W.2d 611, 620 (Iowa 2022). "A district court abuses its discretion when it bases its decisions on grounds or reasons clearly untenable or to an extent that is clearly unreasonable . . . [or] if it bases its conclusions on an erroneous application of the law." *Id.* (alterations in original) (citation omitted).

Concerning the State's error-preservation argument, we note that the determination of admissibility of evidence regarding Ballard's substance-use treatment was a result of Ballard's motion in limine. Ballard's motion "sought to prohibit the State from introducing testimony, other evidence, or arguments about the . . . defendant's treatment at a methadone clinic . . . ." The district court ruled that evidence of Ballard missing his methadone appointment was "inextricably intertwined with the charged crime and severance of that evidence would leave the narrative confusing or misleading" and thus admissible under *State v. Nelson*, 791 N.W.2d 414, 420 (Iowa 2010).

"Generally, denial of a motion in limine does not preserve error for appellate review." *Thoren*, 970 N.W.2d at 620–21. When such a motion is denied, "the resisting party must object at the time the evidence is offered at trial to preserve a challenge to the evidence on appeal." *Id*. at 621. "Error arises when the evidence is introduced at trial, not from ruling on the motion in limine." *Id*. But an objection to preserve evidentiary error is not required when "the ruling . . . reaches the ultimate issue and declares the evidence admissible or inadmissible, [and] it is . . . a final ruling and need not be questioned again during trial." *Id*. (citation omitted). So, we need to determine whether the district court's ruling on Ballard's motion in limine was a "final ruling" to qualify as an exception to error-preservation requirements. *See id*.

The district court's ruling on the challenged motion in limine concerning Ballard's prior substance-use treatment and a previous overdose stated, in relevant part, "If admitted, and weighing factors outlined in *State v. Taylor*, the court cannot say the danger of unfair prejudice substantially outweighs the probative value of this evidence." Concerning the missed methadone appointment, the court determined "the evidence is admissible." Nowhere in the order does the district court indicate that either ruling was final.

This language shows the district court issued an equivocal ruling on the motion, reserving its duty to deny or admit evidence based on balancing probative value and prejudice. Also, the order quoted *Thoren*, stating that a "party must object at the time evidence is offered at trial to preserve a challenge to evidence on appeal," and "[e]rror arises then the evidence is introduced at trial, not from the motion in limine." 970 N.W.2d at 621. Further, in a conversation between defense counsel and the court during trial

about different evidence, the district court reiterated its order was not a final order:

> DEFENSE COUNSEL: Your Honor, just because Court ruled on the motion in limine prior to having all the exhibits and the evidence that we have so far does not mean that I can't bring up the same objection.
>
> First of all the Court may change its mind on those, on that particular evidence. Second I need to preserve it for the purposes of appeal.
>
> . . . .
>
> COURT: All right.
>
> So [defense counsel] you are correct. A motion in limine is only a preliminary determination on the evidence. You're also correct in the fact that to preserve error in the Court's ruling an objection has to be made at the time of trial to the proffered evidence. The motion in limine by itself is not enough to preserve that objection and ruling by the Court.

Accordingly, the district court did not issue a final ruling on the motion in limine, and counsel was required to object to the admission of the evidence to preserve appellate review. *See id.* (holding there was a final ruling on a motion in limine when the district court concluded "the State will be allowed the opportunity to present evidence of prior incidents" absent equivocation); *see also State v. Alberts*, 722 N.W.2d 402, 405–07 (Iowa 2006) (discussing in the context of rulings on motions in limine and error preservation, "[t]he key to our analysis is to determine what the trial court ruling purported to do," and giving weight to the fact that "both parties treated the court's ruling on the motion as a final decision"); *State v. Curtis*, No. 22-1069, 2023 WL 4104116, at *4 (Iowa Ct. App June 21, 2023) (noting "the words of the district court must be given due consideration to evaluate the unequivocal intent of the ruling," "[b]ecause that language can mean the ruling could be reconsidered at a later time during the trial, the ruling was not unequivocal").

11

Because the ruling on the motion in limine was not final, and because Ballard did not object to the evidence of his missed methadone appointment, error was not preserved on this issue. *See Thoren*, 970 N.W.2d at 621.

**AFFIRMED.**